UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KANYE WEST, an individual, and WEST BRANDS, LLC, a Delaware limited liability corporation, individually and d/b/a YE WORLD PUBLISHING and PLEASE GIMME MY PUBLISHING, <br><br> Defendants. | 19 Civ. _____ ( ) <br><br> ECF CASE <br><br> **COMPLAINT AND** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs EMI April Music Inc. ("EMI April") and EMI Blackwood Music Inc. ("EMI Blackwood") (collectively, "EMI"), by and through their attorneys, Manatt, Phelps & Phillips, LLP, for their complaint against Kanye West and West Brands, LLC ("WB"), individually and d/b/a Ye World Publishing and Please Gimme My Publishing (collectively, "West"), allege as follows:

## PRELIMINARY STATEMENT

1.    EMI brings this lawsuit to obtain declaratory and injunctive relief, and damages in response to West's efforts to renege on his bargained-for contractual obligations to the company. Represented by some of the top law firms in the music industry, West chose to enter into an extensively negotiated co-publishing agreement with EMI in 2003 (the "2003 Agreement") and a series of agreements modifying and/or extending the 2003 Agreement in 2004, 2005, 2006, 2009, 2011, 2012, and 2014 (each a "Modification" and, collectively, the "Modifications"), which contain an exclusive New York forum selection clause and a New York choice of law

clause.  West received substantial compensation for these clauses, his other undertakings, and the copyright and other interests that he granted to EMI in the 2003 Agreement and Modifications (collectively, "the Agreements"), including tens of millions of dollars in advance payments alone.

2.       Nevertheless, in a flagrant attempt to forum shop his way around the exclusive New York forum selection clause and New York choice of law clauses to which he voluntarily agreed to be bound, West sued EMI in California on January 25, 2019 (the "California Action") to terminate the Agreements pursuant to California Labor Code § 2855 ("§ 2855" or "the California Statute"), which makes "contract[s] for personal services" unenforceable after seven years.  New York law, however, strictly prohibits such gamesmanship.  Separate and apart from the fact that § 2855 does not apply to the Agreements because they are not personal services contracts, the Agreements' exclusive New York forum selection clause and New York choice of law clauses foreclose West from prosecuting the California Action, and relying on the California Statute in an attempt to evade his contractual commitments to EMI.  The Agreements, therefore, remain in full force and effect in their entirety.  Accordingly, West's filing of and the purported claims he has advanced in the California Action create a justiciable controversy between the parties concerning their respective rights and obligations under the Agreements, and constitute a material breach of the Agreements, entitling EMI to declaratory and injunctive relief, and an award of compensatory damages and attorneys' fees, against him.

## PARTIES

3.       EMI April and EMI Blackwood are corporations engaged in the music publishing business, and organized under the laws of the State of Connecticut with their principal places of business located at 25 Madison Avenue, New York, New York 10010.

4.      Kanye West is a well-known songwriter, recording artist, and producer, who, upon information and belief, is a citizen of the State of Illinois or the State of California.

5.      On information and belief, WB is a limited liability company, of which Kanye West is the only member, and, as such, is a citizen of the State of Illinois or the State of California.  WB is organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.  On information and belief, WB furnishes the services of and owns intellectual property rights in musical works created by Kanye West.  Ye World Publishing ("Ye World") and Please Gimme My Publishing ("Please Gimme") are each a d/b/a or trade name of WB.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the citizenship of West, on the one hand, and of EMI, on the other hand, is completely diverse, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over West pursuant to N.Y. C.P.L.R. §§ 301 and 302(a)(1) because he (i) expressly and "irrevocably" agreed to "submit to the personal jurisdiction" of this Court upon entering into the Agreements; (ii) bound himself to the Agreements' exclusive New York forum selection clause upon entering into the Agreements; and (iii) regularly transacts business in the City and State of New York.

8.      Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) due to (i) the Agreements' forum selection clause; (ii) the parties' express agreement to adjudicate any disputes arising under or relating to the Agreements in this judicial district; and (iii) the fact that a substantial part of the events and omissions giving rise to the claims at issue occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Agreements Overview

The 2003 Agreement

9.      The 2003 Agreement is a co-publishing agreement, pursuant to which EMI paid West, an independent contractor, substantial advances and royalties in exchange for a share of the copyrights in and the revenues generated by musical compositions written or co-written by Kanye West before and after entering into the agreement, and the rights to administer (and receive an administration fee) and exploit the compositions for West's and EMI's mutual benefit for a finite period of time, including for a 12-year period after West fulfills all of his delivery obligations (the "Retention Period").

10.      The 2003 Agreement contains the following choice of law and exclusive forum selection clauses (the "New York Choice Of Law Clause" and the "Exclusive New York Forum Selection Clause", respectively) that clearly and unequivocally mandate the application of New York law to the agreement, and foreclose the parties from bringing legal actions involving claims arising out of or relating to the agreement in any jurisdiction outside New York County, New York:

> THIS AGREEMENT SHALL BE DEEMED ENTERED INTO IN THE STATE
> OF NEW YORK AND THE VALIDITY, INTERPRETATION AND LEGAL
> EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE
> INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO
> CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN
> THE STATE OF NEW YORK, WITH RESPECT TO THE DETERMINATION
> OF ANY CLAIM, DISPUTE OR DISAGREEMENT WHICH MAY ARISE
> OUT OF THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS
> AGREEMENT OR WHICH IN ANY OTHER RESPECT RELATES TO THIS
> AGREEMENT . . . . ANY CLAIM ARISING OUT OF OR RELATING TO
> THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY
> SHALL BE INSTITUTED AND MAINTAINED EXCLUSIVELY IN ANY
> FEDERAL OR STATE COURT LOCATED WITHIN THE COUNTY OF NEW
> YORK IN THE STATE OF NEW YORK.  YOU IRREVOCABLY SUBMIT TO

THE PERSONAL JURISDICTION OF SUCH COURT, AND AGREE NOT TO
ASSERT, BY WAY OF MOTION, AS A DEFENSE OR OTHERWISE, THAT
(I) YOU ARE NOT SUBJECT PERSONALLY TO THE JURISDICTION OF
SUCH COURT, (II) THE LITIGATION IS BROUGHT IN AN
INCONVENIENT FORUM, (III) THE VENUE OF THE LITIGATION IS
IMPROPER OR THE LITIGATION SHOULD BE TRANSFERRED FOR ANY
REASON TO ANY OTHER VENUE, OR (IV) THIS AGREEMENT OR THE
SUBJECT MATTER HEREOF MAY NOT BE ENFORCED IN OR BY SUCH
COURT.

11.     West's primary undertaking in the 2003 Agreement was to deliver three new

musical compositions embodied on albums released by a major record label per year (or longer if

West needed more time) (each a "Contract Year") for three years (the "Initial Contract Period").

West also gave EMI an option for an additional Contract Year (the "First Option Period"), which

option EMI timely exercised.  In addition, West transferred to EMI rights in all musical

compositions he wrote prior to the 2003 Agreement, and those in which he previously held or

later acquired any ownership, control or administration interest.  EMI paid West substantial

advances for the rights it acquired for the Initial Contract Period and First Option Period, and

agreed to pay West additional advances depending upon, among other things, its recoupment of

prior advances, and the chart position of the new musical compositions that West delivered.

12.     EMI has no say in any aspect of the creation or content of the musical

compositions in which it acquired rights under the 2003 Agreement, as modified or extended.

EMI, thus, has no right to – and does not – direct, supervise, or manage (i) what West writes; (ii)

what musical compositions he records; or (iii) what musical compositions he delivers to EMI to

satisfy his delivery obligations.  In short, West is an independent contractor over whom EMI

exercises no control whatsoever.  Thus, the purpose of the 2003 Agreement is not the furnishing

of personal services, but rather the allocation of rights in musical compositions in exchange for

royalty payments.  Accordingly, the 2003 Agreement is not a personal services contract.

13.     Finally, the 2003 Agreement provides that during its term (the "Term") – which is ongoing as of the date hereof – West would not "act at any time in any manner inconsistent with [EMI's] rights or [West's] obligations [under the 2003 Agreement]" (the "Anti-Interference Clause").  West agreed that "should [he] engage in any action which affects, hinders, or obstructs [EMI's] rights in and to any [musical composition(s) that are the subject of the 2003 Agreement, EMI's] loss cannot be adequately compensated in damages, and [EMI] shall be entitled to enjoin [West] from engaging in such action, and/or seek other injunctive or other equitable relief" (the "Injunction Clause").  West also agreed that he would "reimburse [EMI], on demand, for any reasonable out-of-pocket legal expenses (including, without limitation, outside counsel fees) incurred by [EMI] in connection with any liability or claim arising out of any breach or alleged breach by [West], of any of [his] obligations, warranties or representations in th[e 2003] Agreement" (the "Indemnification Clause").

The Modifications

14.     West and EMI agreed to modify and/or extend the 2003 Agreement seven times.

15.     First, West and EMI entered into the 2004 Modification in order to add Please Gimme, one of West's publishing designees, as a party to the 2003 Agreement.  West dissolved Please Gimme in early 2010, and merged it into WB, but continued to use Please Gimme as a d/b/a or trade name of WB.[1]

16.     Second, West and EMI entered into the 2005 Modification, which, among other things, granted EMI an option for an additional Contract Year (the "Second Option Period") under the 2003 Agreement.  EMI paid West a significant advance for, and agreed to pay him another advance in the event that it exercised, this new right.

---

[1] Ye World was a party to the 2003 Agreement.  However, similar to Please Gimme, West dissolved Ye World in 2004, and merged it into WB, but continued to use it as a d/b/a or trade name for WB.

17.     Third, West and EMI entered into the 2006 Modification, which, among other things, (i) acknowledged that the Initial Contract Period concluded as of September 30, 2006; (ii) extended the Term of the 2003 Agreement for three Contract Years commencing as of October 1, 2006 (the "Second Contract Period"), during which time West agreed to deliver a total of 18 new musical compositions; and (iii) left intact EMI's rights with respect to the First Option Period and the Second Option Period (which the parties agreed would commence, if at all, after the Second Contract Period), but increased the number of new musical compositions that West had to deliver during each such period from three to six.  In exchange for the rights EMI acquired in the Second Contract Period and other changes under the 2006 Modification, EMI, among other things, (i) paid West significant new advances; (ii) agreed to pay West significant additional advances for the First Option Period and the Second Option Period, if exercised; (iii) reduced the duration of the Retention Period; and (iv) agreed to a mechanism by which West could reduce that duration even further.

18.     Fourth, West and EMI entered into the 2009 Modification, which, among other things, (i) confirmed that the Second Contract Period expired as of October 31, 2009; (ii) extended the Term of the 2003 Agreement for three more Contract Years commencing as of November 1, 2009 (the "Third Contract Period"), during which time West agreed to deliver a total of 18 new musical compositions; and (iii) left intact EMI's rights with respect to the First Option Period and the Second Option Period (which the parties agreed would commence, if at all, after the Third Contract Period), as set forth in the 2006 Modification.  In exchange for the rights it acquired in the 2009 Modification, EMI, among other things, (i) paid West significant new advances, and agreed to pay him additional advances; (ii) reduced by 50 percent its administration fee for musical compositions delivered during for the First Contract Period and

Second Contract Period, and eliminated its administration fee for those delivered during the Third Contract Period, and any subsequent Option Periods.

19.     Fifth, West and EMI entered into the 2011 Modification, which, among other things, (i) confirmed that EMI exercised its First Option Period rights, thereby extending the Term of the 2003 Agreement by one additional Contract Year, and prepaid West the maximum advance to which he could be entitled upon the commencement of the First Option Period; (ii) specified that the First Option Period would commence upon the expiration of the Third Contract Period; and (iii) granted EMI an option for an additional Contract Year (the "Third Option Period") under the 2003 Agreement, during which – like the First Option Period and Second Option Period – West would deliver six new musical compositions.  In exchange for the rights EMI acquired under the 2011 Modification, EMI, among other things, (i) paid West a significant additional advance; and (ii) agreed to pay West a large advance for the Third Option Period, if exercised.

20.     Sixth, West and EMI entered into the 2012 Modification in order to substitute WB for and replace Ye World and Please Gimme as parties to the 2003 Agreement, as modified and extended by the earlier Modifications.  In entering into the 2012 Modification, West specifically acknowledged that (i) he previously had dissolved Ye World and Please Gimme, and merged them into WB; (ii) Ye World and Please Gimme no longer had and would not in the future have a separate legal existence from WB; and (iii) each of Ye World and Please Gimme was and would remain a d/b/a of WB.

21.     Seventh, West and EMI entered into the 2014 Modification, which, among other things, (i) reconfirms the prior dissolution of Ye World and Please Gimme; (ii) provides that the Third Contract Period will be deemed to end as of December 31, 2014, even though West did not

fulfill his delivery requirements for the period; (iii) confirms that the First Option Period under the 2003 Agreement would commence as of January 1, 2015; and (iv) maintains the requirement that West deliver six new musical compositions for the First Option Period, but increases that requirement to seven for the Second Option Period and Third Option Period, and imposes a new royalty threshold requirement on all such compositions.  EMI paid West a substantial additional advance under the 2014 Modification.

22.     In the 2006 Modification, 2009 Modification, 2011 Modification, and 2014 Modification West expressly acknowledged and agreed that (i) neither the 2003 Agreement nor these modifications "constitute contracts for [his] personal services" (the "Personal Services Disclaimer"); (ii) he "shall not, in the future, make any claims that [he is] not required, under California law or otherwise, to fulfill all obligations set forth in the [2003] Agreement and/or th[ese] [m]odification[s]" (the "California Law Disclaimer"); and (iii) New York law, not California law, governs all such agreements.

23.     In each Modification, West expressly "ratified and confirmed" the 2003 Agreement and all prior Modifications, if any, and expressly agreed that the 2003 Agreement and all prior Modifications, if any, "shall remain in full and effect", except as specifically provided in the Modification.  Accordingly, in the 2003 Agreement and no fewer than seven times thereafter, West, with experienced counsel representing him, knowingly and voluntarily – and for substantial consideration – agreed to bind himself to the New York Choice Of Law Clause, the Exclusive New York Forum Selection Clause, and the other provisions in 2003 Agreement described in paragraphs 10 through 13 above.

### The Agreements' Close Connection To The State of New York

24.     The Agreements are closely connected to the State of New York.

25.    Besides the fact that EMI April and EMI Blackwood both have their principal places of business in the State of New York, the Agreements make clear that (i) the performance of West's obligations "will be deemed to have taken place in the State of New York, . . . regardless of where [West] reside[s] or where [West] created or acquired any or all [of the musical compositions due under the Agreements]"; (ii) West must deliver to EMI in the State of New York all of the elements required for him to satisfy his contractual obligations; (iii) except for the 2011 Modification, in connection with which West used California counsel, the Agreements were fully negotiated in the State of New York; (iv) except for the 2011 Modification, which West signed and had notarized in the State of Massachusetts, West signed and had notarized all of the Agreements in the State of New York; (v) except for the 2011 Modification and the 2012 Modification, which specify a Colorado address, all of the Agreements provide for West to receive all payments and notices under the Agreements in the State of New York; (vi) any audits of EMI's books and records that West undertakes must take place in the State of New York; and (vi) the opening and closing times of EMI's offices in the State of New York determine the expiration of time periods specified in the Agreements.

26.    The Agreements' numerous points of contact with New York, individually and collectively, demonstrate that the New York Choice of Law Clause and the Exclusive New York Forum Selection Clause in the Agreements are entirely proper, and foreclose any good faith argument by West that they are not enforceable.

27.    So, too, do New York General Obligations Law §§ 5-1401 and 5-1402.

### The Parties' Ongoing Contractual Relationship

28.    EMI timely exercised its rights for the Second Option Period before West fulfilled his delivery obligations for the First Option Period, and still has the right to exercise its

entitlement to the Third Option Period.

29.     West has not yet fulfilled all of the delivery requirements for the Second Option Period, or any of the delivery requirements for the Third Option Period, assuming EMI exercises its rights for it.

30.     As of the date hereof, therefore, the Agreements still entitle EMI to the benefits of its bargain with respect to the balance of West's delivery obligations for the Second Option Period, all rights in the Third Option Period, and all Retention Period rights (collectively, the "Ongoing EMI Rights").

### The Uncertainty Created By The California Action

31.     By filing the California Action, West has repudiated his obligations under the Agreements from and after October 1, 2010, and, as a result, indicated that he has no intention of honoring the Ongoing EMI Rights.

32.     By filing the California Action, West also has publicly taken the position that, as of October 1, 2010, EMI has no copyright interests, administration rights, or any other rights in West's musical compositions, no matter when written or previously delivered to EMI, and that all such interests and rights belong to him alone.

33.     The California Action, therefore, has created uncertainty around EMI's and West's respective rights and obligations under the Agreements.

### The Myriad Breaches Triggered By The California Action

34.     West commenced the California Action on or about January 25, 2019 by filing a complaint in the Superior Court of the State of California, Los Angeles County (the "California Complaint"), a true and correct copy of which is annexed hereto as **Exhibit A.**  The California Complaint purports to state claims under California law for declaratory relief, restitution/unjust

enrichment, and constructive trust. West declined EMI's request that he voluntarily dismiss these claims in California, or refile them in New York County, New York.

35. The California Complaint does not mention the Exclusive New York Forum Selection Clause or the New York Choice Of Law Clause, let alone allege that either of the clauses was the product of fraud or other wrongdoing.

36. Because each of the purported claims in the California Action arises out of and relates to the Agreements and the transactions contemplated by the Agreements, West's filing of the California Action breaches his obligations under the Exclusive New York Forum Selection Clause.

37. Because West's filing of the California Action interferes with EMI's rights and West's obligations in connection with Exclusive New York Forum Selection Clause, the filing also constitutes a breach of the Anti-Interference Clause.

38. Because West bases each of the purported claims in the California Action on California law, each of the claims interferes with EMI's rights and West's obligations in connection with the New York Choice Of Law Clause and the California Disclaimer, and constitutes a breach of these provisions and the Anti-Interference Clause.

39. The declaratory relief claim in the California Complaint seeks a judicial declaration terminating the Agreements on the grounds that California Labor Code § 2855 renders them unenforceable and without any force and effect from and after October 1, 2010, seven years after the parties entered into the 2003 Agreement. Based on this theory, West purports to allege, among other things, that (i) EMI "has no further right to enforce [West's] obligations under the [Agreements]"; and (ii) "[a]ll rights in and to any intellectual property created by [West] on or after October 1, 2010 should revert and be conveyed to [West]

immediately, subject to no financial or other obligations to EMI."

40.     West bases his claim for restitution/unjust enrichment in the California Action on the theory that, even though "EMI no longer possessed the right to receive [West's] services" as of October 1, 2010, EMI continued to benefit "by taking assignments of [West's] rights to the [musical] compositions . . . West delivered to EMI on or after October 1, 2010 and receiving licensing and other revenues from the exploitation, on and after that date, of compositions written both before and after October 1, 2010."

41.     West's claim for constructive trust in the California Action rests on the premise that EMI received, but is not entitled to retain, "the ownership interest [West] conveyed to EMI in each musical composition delivered to EMI on or after October 1, 2010, and . . . the monies EMI received [and will receive in the future] from the exploitation of any musical composition [West] delivered to EMI both before and after October 1, 2010, less any monies EMI has already paid to [West] with respect to such exploitation."

42.     Because West's claims for declaratory relief, restitution/unjust enrichment, and constructive trust in the California action are inconsistent with EMI rights and West's obligations in connection with the Personal Services Disclaimer, the Third Contract Period, the First Option Period, the Second Option Period, the Third Option Period, and the Retention Period under the Agreements, each of the claims constitutes a separate breach of the Anti-Interference Clause.

## FIRST CAUSE OF ACTION
### (Declaratory Relief)

43.     EMI repeats and realleges paragraphs 1 through 42 above as if fully set forth herein.

44.     On account of the foregoing, there now exists between EMI and West an actual, justiciable controversy with respect to which EMI is entitled to have a declaration of its rights

and further relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* and/or N.Y. C.P.L.R. § 3001, because of the facts, conditions and circumstances set forth herein.

45.     EMI is entitled to a declaratory judgment that the 2003 Agreement between EMI and West, as modified and extended by the Modifications, is a valid and binding agreement under applicable New York law, and remains in full force and effect.

46.     EMI is entitled to a declaratory judgment that § 2855, the sole basis that West relies on in the California Action for his contention that the 2003 Agreement, as modified and/or extended, is unenforceable from and after October 1, 2010, does not apply to the agreement because New York law, not California law, governs the agreement, and that, even if California law were applicable (and it is not), § 2855 would not apply to the agreement because, as West has repeatedly acknowledged, it is not a personal services contract.

47.     EMI is entitled to a declaratory judgment that (i) the parties are currently in the Second Option Period for which West has not fulfilled all of his delivery obligations; (ii) EMI retains its rights to further extend the Term of the 2003 Agreement by exercising its option for the Third Option Period, and obtain the benefit of West fulfilling his delivery obligations for this additional period; and (iii) EMI retains its copyright interests and all other rights in the Compositions, including, without limitation, the exclusive right to administer such Compositions, during the remainder of the Term and the Retention Period.

48.     EMI is entitled to a declaratory judgment that West has no right to litigate the purported claims at issue in the California Action in any court other than the federal or state courts located in New York County, New York, which have exclusive jurisdiction and venue over any action relating to the Agreements and the transactions they contemplate.

49.     EMI is entitled to a declaratory judgment that West has no right to enter into any

agreement with respect to the musical compositions delivered or due to be delivered to EMI under the Agreements until the Agreements lawfully expire in accordance with their terms, including, without limitation, EMI's rights during the Retention Period and right to match any offer made to West prior to expiration of the Retention Period.

## SECOND CAUSE OF ACTION
### (Breach of Contract – Forum Selection Clause)

50.     EMI repeats and realleges paragraphs 1 through 42 as if fully set forth herein.

51.     The 2003 Agreement between EMI and West, as modified and/or extended by the Modifications, is a valid and binding agreement, and remains in full force and effect.

52.     EMI has performed all of its material obligations under the 2003 Agreement, as modified and/or extended by the Modifications, except those excused or precluded by West's conduct.

53.     The contractual obligations owed by West to EMI, including with respect to Exclusive New York Forum Selection Clause, as described above, are valid and enforceable, and have not been excused.

54.      The Exclusive New York Forum Selection Clause requires the parties to resolve all disputes arising from or relating to the 2003 Agreement, as modified and/or extended, in the federal or state courts located in New York County, New York.

55.     West materially breached the 2003 Agreement, as modified and/or extended, by filing the California Action in violation of the Exclusive New York Forum Selection Clause, and by refusing to dismiss the California Action and refile the purported claims in the California Action in an action in New York County, New York.

56.     As a direct and proximate result of the foregoing breaches, EMI suffered injury, and is entitled to compensatory and consequential damages in an amount to be proven at trial, as

well as pre- and post-judgment interest, attorneys' fees and costs.

57.    EMI also is entitled to preliminary and permanent injunctive relief prohibiting West from any continued prosecution of the California Action, and further requiring West to take all steps necessary to secure the termination of the California Action.

58.    EMI is likely to succeed on the merits in demonstrating that West breached the Exclusive New York Forum Selection Clause.

59.    Unless West is preliminarily and permanently enjoined from continued prosecution of the California Action, EMI will suffer immediate and irreparable harm because, among other things, it will be deprived of its bargained-for litigation forum, and forced to litigate two separate actions based on the same underlying conduct at the same time.

60.    EMI does not have an adequate remedy at law.

61.    Without equitable relief, EMI will still be required to defend itself in the California Action in a jurisdiction other than New York.

62.    The balance of hardships favors EMI.  West will not be harmed by the injunction because West, a sophisticated businessperson and entity, freely agreed to be bound by the Exclusive New York Forum Selection Clause with the advice of well-regarded counsel.

63.    The public interest is served by enforcing the Exclusive New York Forum Selection Clause agreed to by the parties.

64.    In any event, because the California Action (a) is a breach of West's obligations under the Exclusive New York Forum Selection Clause, and (b) affects, hinders, and obstructs EMI's rights in musical compositions that are the subject of the 2003 Agreement, West, by operation of the Injunction Clause in the 2003 Agreement, has conceded that EMI's loss cannot be adequately compensated in damages, and that EMI is entitled to enjoin him from continuing

to maintain the California Action.

### THIRD CAUSE OF ACTION
#### (Breach of Contract – Anti-Interference Clause)

65.     EMI repeats and realleges paragraphs 1 through 42 as if fully set forth herein.

66.     The 2003 Agreement between EMI and West, as modified and/or extended by the Modifications, is a valid and binding agreement, and remains in full force and effect.

67.     EMI has performed all of its material obligations under the 2003 Agreement, as modified and/or extended by the Modifications, except those excused or precluded by West's conduct.

68.     The contractual obligations owed by West to EMI, including with respect to the Anti-Interference Clause, as described above, are valid and enforceable, and have not been excused.

69.     The Anti-Interference Clause requires that West not "act at any time in any manner inconsistent with [EMI's] rights or [West's] obligations."

70.     West materially breached the 2003 Agreement, as modified and/or extended, by violating the Anti-Interference Clause, including, without limitation, as a result of (i) filing the California Action in contravention of EMI's rights and West's obligations under the Exclusive New York Forum Selection Clause; (ii) refusing to dismiss the California Action and refile the purported claims in the California Action in an action in New York County, New York; (iii) asserting claims in the California Action under California law in contravention of EMI's rights and West's obligations under the New York Choice Of Law Clause and the California Disclaimer; and (iv) asserting claims in the California Action that are inconsistent with EMI rights and West's obligations in connection with the Personal Services Disclaimer, the Third Contract Period, the First Option Period, the Second Option Period, the Third Option Period, and

-17-

the Retention Period.

71.    As a direct and proximate result of the foregoing breaches, EMI suffered injury, and is entitled to compensatory and consequential damages in an amount to be proven at trial, as well as pre- and post-judgment interest, attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Attorneys' Fees)**

72.    EMI repeats and realleges paragraphs 1 through 42 as if fully set forth herein.

73.    The Indemnification Clause requires West to reimburse EMI for "any reasonable out-of-pocket legal expenses (including, without limitation, outside counsel fees) incurred by [EMI] in connection with any liability or claim arising out of any breach or alleged breach by [West]."

74.    As a result of West's various wrongful and material breaches of the 2003 Agreement, as modified and/or extended, detailed above, EMI has incurred and will incur significant legal fees and expenses to which it is entitled to reimbursement from West in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, EMI respectfully requests that this Court grant judgment in favor of EMI and against Defendants awarding the following relief:

1.    On EMI's First Cause of Action, a judicial declaration that:  (i) the 2003 Agreement, as modified and extended, remains in full force and effect; (ii) New York law, not California law, governs the 2003 Agreement, as modified and extended, and forecloses the application of § 2855 to this controversy; (iii) even if California law were applicable to this controversy, § 2855 would not apply to the 2003 Agreement, as modified and extended, because it is not a contract for personal services; (iv) the parties are currently in the Second Option Period

-18-

for which West has not fulfilled his all of delivery obligations; (v) EMI retains its rights to further extend the Term of the 2003 Agreement by exercising the Third Option Period, and obtain the benefit of West fulfilling his delivery obligations for this period; and (vi) EMI retains its copyright interests and all other rights in the Compositions, including, without limitation, the exclusive right to administer such Compositions, during the Term and the Retention Period; (vii) West has no right to enter into any agreement with respect to the musical compositions delivered or due to be delivered to EMI under the Agreements until the Agreements lawfully expire in accordance with their terms, including, without limitation, EMI's rights during the Retention Period and right to match any offer made to West prior to expiration of the Retention Period; and (viii) West has no right to litigate the purported claims at issue in the California Action in any court other than the federal or state courts located in New York County, New York.

2.      On EMI's Second Cause of Action, an award of general and special compensatory damages in an amount to be ascertained at trial, but believed to be in excess of $75,000, and an order granting preliminary and permanent injunctive relief (i) prohibiting Defendants from maintaining or taking any steps in furtherance of continued prosecution of the California Action, and (ii) requiring Defendants to take all steps necessary to secure the termination of the California Action;

3.      On EMI's Third Cause of Action, an award of general and special compensatory damages in an amount to be ascertained at trial, but believed to be in excess of $75,000;

4.      On EMI's Fourth Cause of Action, an award of costs of suit and reasonable attorneys' fees incurred by EMI in an amount to be determined at trial, but believed to be in excess of $75,000, resulting from West's breach of the Agreements in accordance with the Indemnification Clause; and

5.      For such other and further relief as the Court deems just and proper.

Dated:  New York, New York                    Respectfully submitted,
          March 7, 2019


                                              By: /s/ Robert A. Jacobs
                                                  Robert A. Jacobs
                                                  Prana A. Topper

                                                  Manatt, Phelps & Phillips, LLP
                                                  7 Times Square
                                                  New York, NY 10036
                                                  Telephone:  (212) 790-4500
                                                  Facsimile: (212) 790-4545
                                                  rjacobs@manatt.com
                                                  ptopper@manatt.com

                                                  *Attorneys for EMI April Music Inc. and EMI*
                                                  *Blackwood Music Inc.*

                                                  *Of Counsel for Plaintiffs*:

                                                  Maura K. Gierl (*pro hac vice* application
                                                  forthcoming)
                                                  Molly Wyler (*pro hac vice* application
                                                  forthcoming)
                                                  Manatt, Phelps & Phillips, LLP
                                                  11355 W. Olympic Blvd.
                                                  Los Angeles, CA 90064
                                                  Telephone:  (310) 312-4000
                                                  Facsimile:  (310) 312-4224
                                                  mgierl@manatt.com
                                                  mwyler@manatt.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs EMI April Music

Inc. and EMI Blackwood Music Inc. hereby demand a trial by jury in the above-captioned action

of all issues triable by jury.

Dated:  New York, New York                Respectfully submitted,
         March 7, 2019

By: /s/ Robert A. Jacobs
    Robert A. Jacobs
    Prana A. Topper

    Manatt, Phelps & Phillips, LLP
    7 Times Square
    New York, NY 10036
    Telephone:  (212) 790-4500
    Facsimile: (212) 790-4545
    rjacobs@manatt.com
    ptopper@manatt.com

    *Attorneys for EMI April Music Inc. and EMI Blackwood Music Inc.*

    *Of Counsel for Plaintiffs*:

    Maura K. Gierl (*pro hac vice* application forthcoming)
    Molly Wyler (*pro hac vice* application forthcoming)
    Manatt, Phelps & Phillips, LLP
    11355 W. Olympic Blvd.
    Los Angeles, CA 90064
    Telephone:  (310) 312-4000
    Facsimile:  (310) 312-4224
    mgierl@manatt.com
    mwyler@manatt.com