**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMI APRIL MUSIC INC. and EMI
BLACKWOOD MUSIC INC.,

                         Plaintiffs,

        -against-

KANYE WEST, an individual, and WEST
BRANDS, LLC, a Delaware limited
liability corporation, individually and d/b/a
YE WORLD PUBLISHING and PLEASE
GIMME MY PUBLISHING,

                         Defendants.

Case No. 1:19-cv-02127 (VEC)

ORAL ARGUMENT REQUESTED

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS KANYE WEST AND WEST BRANDS, LLC'S**
**MOTION TO DISMISS, TRANSFER, OR STAY THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND FACTS ......................................................................................................3

     A.    Parties.............................................................................................................3

     B.    The 2003 Agreement......................................................................................4

     C.    The 2003 Agreement Extensions ...................................................................7

     D.    Procedural History .........................................................................................9

LEGAL DISCUSSION.........................................................................................................11

I.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLEASE GIMME IS
     A NON-DIVERSE INDISPENSABLE PARTY ...............................................11

II.    THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON
     CONVENIENS* ................................................................................................14

III.   THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS ACTION IN
     FAVOR OF THE CALIFORNIA ACTION BASED ON FIRST TO FILE RULE.........17

IV.   A STAY IS ALSO WARRANTED BASED ON PUBLIC POLICY AND
     CONSERVATION OF JUDICIAL RESOURCES ..........................................20

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## Cases

*2 Montauk Highway LLC v. Glob. Partners LP*,
  296 F.R.D. 94 (E.D.N.Y. 2013) ........................................................ 13

*800-Flowers, Inc. v. Inter. Florist, Inc.*,
  860 F.Supp. 128 (S.D.N.Y. 1994) .................................................... 16

*Ace Am. Ins. Co. v. Graftech Int'l Ltd.*,
  2014 WL 2884681 (S.D.N.Y. June 24, 2014) ................................... 17

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010) ............................................................ 18

*Bartlett v. Honeywell Int'l Inc.*,
  737 F. App'x 543 (2d Cir. 2018) ..................................................... 13

*Berman v. Informix Corp.*,
  30 F.Supp.2d 653 (S.D.N.Y. 1998) ................................................. 19

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*,
  630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009). ................................... 21

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) .......................................... 18, 19

*De Havilland v. Warner Bros.*,
  67 Cal. App. 2d 225 (1944) ............................................................... 8

*Dow Jones & Co. v. Harrods Ltd.*,
  346 F.3d 357, 359-60 (2d Cir. 2003). ............................................. 17

*First City Nat. Bank and Trust Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989) ......................................................... 17, 18

*Flores v. Southern Peru Copper Corp.*,
  253 F.Supp.2d 510 (S.D.N.Y. 2002) ............................................... 16

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
  960 F. Supp. 701 (S.D.N.Y. 1997) .................................................. 11

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ....................... 16

*Hallingby v. Hallingby*,
  574 F.3d 51 (2d Cir. 2009) .............................................................. 12

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ......................................................... 14, 16

*Landis v. North Am. Co.*,
 299 U.S. 248 (1936) ............................................................................... 20

*LaSala v. Bank of Cyprus Pub. Co.*,
 510 F. Supp. 2d 246 (S.D.N.Y. 2007) .................................................. 14

*LaSala v. UBS, AG*,
 510 F. Supp. 2d 213, 230 (S.D.N.Y. 2007) ......................................... 16

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*,
 840 F.Supp. 211 (E.D.N.Y. 1994) ....................................................... 21

*Marvel Characters, Inc. v. Kirby*,
 726 F.3d 119 (2d Cir. 2013) ................................................................ 13

*MasterCard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*,
 471 F.3d 377 (2d Cir. 2006) ................................................................ 11

*Mr. Bar-B-Q, Inc. v. Jaccard Corp.*,
 No. 09CV0064JSAKT, 2009 WL 10709161 (E.D.N.Y. July 8, 2009) ........... 18

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ............................................................................. 15

*Please Gimme My Publishing, v. EMI April Music, Inc.*,
 19-cv-01527-DMG-FFM (C.D. Cal.) ................................................... 17

*Race Safe Sys., Inc. v. Indy Racing League*,
 251 F. Supp. 2d 1106 (N.D.N.Y. 2003) .............................................. 11

*Regions Bank v. Wieder & Mastroianni, P.C.*,
 170 F. Supp. 2d 436 (S.D.N.Y. 2001) ................................................ 18

*Royal Park Investments SA/NV v. Bank of Am. Corp.*,
 941 F. Supp. 2d 367 (S.D.N.Y. 2013) ................................................ 20

*Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*,
 2003 WL 21964959 (S.D.N.Y. Aug. 19, 2003) .................................. 13

*Tel. Sys. Int'l, Inc. v. Network Telecom PLC*,
 303 F. Supp. 2d 377 (S.D.N.Y. 2003) ................................................ 16

*Torelli v. Torelli*,
 941 F. Supp. 36 (S.D.N.Y. 1996) ....................................................... 11

*Travelers Indem. Co. v. Household Int'l, Inc.*,
 775 F. Supp. 518 (D. Conn. 1991) ...................................................... 11

*Travelers Indemnity Company et. al v. Crown Cork & Seal Company. Inc.*,
 865 F.Supp. 1083 (S.D.N.Y. 1994) ..................................................... 20

*Turedi v. Coca Cola Co.*,
 460 F. Supp. 2d 507 (S.D.N.Y. 2006) ................................................ 15

*Viacom Int'l, Inc. v. Kearney,*
    212 F.3d 721 (2d Cir. 2000) ........................................................................... 11

*Visión en Análisis y Estrategia, S.A. v. Andersen,*
    662 F. App'x 29 (2d Cir. 2016) ...................................................................... 13

*Waldman v. Palestine Liberation Organization,*
    835 F.3d 317 (2d Cir. 2016) ........................................................................... 14

*William Gluckin & Co. v. Int'l. Playtex Corp.,*
    407 F.2d 177 (2d Cir. 1969) ........................................................................... 16

*Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co.,*
    2005 WL 912184 (S.D.N.Y. Apr. 19, 2005) .................................................. 20

## Statutory Authorities/Rules

28 U.S.C. § 1332(a)(1) ........................................................................................ 13

28 U.S.C. § 1332(c)(1) ........................................................................................ 12

28 U.S.C. § 1404(a) ............................................................................................. 18

Cal. Lab. Code § 2855 ..................................................................................... 1, 8

## Rules and Regulations

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 16

Fed. R. Civ. P. 12(b)(3) ...................................................................................... 16

Fed. R. Civ. P. 12(b)(7) ........................................................................................ 2

Fed. R. Civ. P. 17(b) .......................................................................................... 12

Fed. R. Civ. P. 19(a) ............................................................................................. 2

Fed. R. Civ. P. 19(b) ...................................................................................... 2, 13

Defendants submit this Memorandum of Law in Support of their Motion to Dismiss EMI April Music, Inc. and EMI Blackwood Music, Inc.'s ("Plaintiffs" or "EMI") Complaint.

## PRELIMINARY STATEMENT

EMI filed this counter-suit in New York against Kanye West for an improper purpose: to escape the stringent labor protections California affords those who provide personal services. For more than 80 years, it has been against California public policy to require anyone to serve any master for more than seven years. Here, Mr. West has been working for EMI for nearly 16 years under a lopsided and oppressive contract. EMI's reflexive lawsuit is improper and should be dismissed for three reasons: (1) this Court lacks subject matter jurisdiction; (2) New York is an inconvenient forum; and (3) Mr. West was the first to sue over the issue and did so in California.

Even if Mr. West's publishing contracts with EMI were not unfair (they are), even if their terms valued Mr. West's contributions in line with the enormous global success he has achieved (they do not), and even if EMI had not underpaid Mr. West what they owe him (they have), he would be entitled to his freedom. Under California Labor Code Section 2855, Plaintiffs were prohibited from imposing obligations under Mr. West's personal services contract more than seven years after the contract began – in this case, 2003. Yet, while EMI's contract with Mr. West should have terminated in 2010, EMI has continued to deny one of the world's most iconic, talented, and prolific artists the "moment of freedom" Section 2855 guarantees. Instead, EMI has sought to tie him to an exclusive publishing agreement that could last for years, if not his entire life. Equally improper, EMI now asks this Court to ratify EMI's unlawful conduct by adjudicating a matter over which the Court lacks jurisdiction to circumvent the very policy protections EMI has violated and keep Mr. West bound to the contract indefinitely.

The jurisdictional defect apparent on the face of EMI's complaint is fatal.   EMI brought suit solely against Mr. West and his company, West Brands, LLC.  In so doing, EMI failed to join a necessary and indispensable party under Federal Rule of Civil Procedure 19(a) and (b), Please Gimme My Publishing, Inc. ("Please Gimme"), which exists to furnish the services of, and own the music assets created by, Mr. West.  The reason for Plaintiffs' omission is obvious: since Please Gimme, like EMI, is a New York corporation, joinder would destroy complete diversity, thereby depriving this Court of subject matter jurisdiction.  *See infra* at 11-14. Plaintiffs' attempt to camouflage this omission by listing Please Gimme (alongside Ye World Publishing) as d/b/a under West Brands is erroneous given that Please Gimme is an independent legal entity that, by EMI's own admission, became a party to the contract in 2004.  *See* Compl. ¶ 15 n.1.  That Please Gimme was dissolved in 2010 does not alter this analysis, particularly since EMI has repeatedly recognized its status as a legitimate New York corporation in other cases.  *See infra* at 12.  Because complete diversity is lacking, the Court can and must dismiss the case on this basis alone under Federal Rule of Civil Procedure 12(b)(7).

There are other, independently sufficient reasons to dismiss.  First, under the doctrine of *forum non conveniens*, the parties' dispute should be adjudicated in California, where Mr. West lives, raises his family, owns multiple businesses and actively contributes to the community. EMI's choice of forum – motivated purely by ***its*** forum-shopping, to escape the protections of California law, is entitled to no deference.  *See infra* at 14.  Moreover, Plaintiffs can easily either refile their action in California where Mr. West's lawsuit is pending, or frame their arguments as cross-claims (albeit, superfluous ones) in response to his complaint.[1]  Finally, both the public and

---

[1]  Mr. West's lawsuit in California is stayed until July 15, 2019 while the parties engage in settlement discussions.  If no agreement is reached, and the stay is terminated, Mr. West will proceed with his claims in California.

private factors tip decisively in favor of adjudicating the parties dispute in California.  *See infra* at 14-16.

Second, because Mr. West's January 25, 2019 lawsuit in California was the first to be filed, and constitutes a legitimate attempt to adjudicate his rights under the controlling law, Section 2855,  this Court should adhere to its traditional, first-to-file policy and decline to hear the case.  EMI has not, and cannot, demonstrate any necessity to adjudicate its counter-claims in New York, particularly since its filing – and the coercive New York forum selection and choice of law clauses on which it relies – are a transparent attempt to do an end run around California law and public policy.  *See infra* at 16.

Finally, should the Court decline to dismiss the Complaint, Defendants respectfully request that Plaintiffs' lawsuit be stayed and/or transferred to California based on firmly established principles of abstention, judicial convenience, and public policy.

## BACKGROUND FACTS

### A.   Parties

Kanye West is a singer, songwriter, record producer, entrepreneur, and fashion designer. Since moving to California nearly two decades ago to pursue his music career, Mr. West has gained international acclaim, including 21 Grammy awards.  *Time* magazine has twice named him one of the 100 most influential people in the world.

Mr. West owns three companies that furnish his services and own his intellectual property: (1) West Brands, LLC ("West Brands"), a limited liability company organized under the laws of Delaware, with its principal place of business in Los Angeles County, (2) Ye World Publishing ("Ye World"), a Delaware corporation with principal place of business in Los Angeles County, and (3) Please Gimme, a New York corporation, with its principal place of business in Los Angeles County.

Plaintiffs, EMI April Music, Inc. and EMI Blackwood Music Inc., are both Connecticut corporations with principal places of business in New York.  EMI is one of the largest music publishers in the world, generating more than $4 billion annually from its roster of songwriters.

Mr. West moved to California in the early 2000s to continue to write and produce records there, and not in New York. West Decl. ¶ 5. Since then, he has won 21 Grammy awards and received 69 nominations, making him one of the top Grammy winners and among the most decorated recording artists in the world. He has lived in California ever since. West Decl. ¶ 5.

### B.    The 2003 Agreement

A music publisher acts as a representative for the composer if a recording artist wants to record one of the songwriter's works or if someone, such as the producer of a movie or commercial advertisement, wants to use a recording of the song in a movie or TV ad.  A publisher typically retains a percentage of the license fees paid for those and other uses of the work.  It often agrees to advance the songwriter funds against royalties from works the songwriter will create.

During the recording of Mr. West's first album, EMI approached Mr. West to negotiate a contract for the music publishing aspects of his career.  Pursuant to an agreement that purported to be effective as of October 1, 2003, Mr. West and Ye World, the company through which he then conducted his songwriting activities, entered into an agreement with EMI (the "2003 Agreement").[2]  Through the 2003 Agreement, EMI obtained Mr. West's personal services as a songwriter.  The Agreement states that, during its "Term" Mr. West will not "either directly or indirectly write musical compositions for" anyone other than EMI.  *See* 2003 Agreement ¶ 16.02.

---

[2]  EMI did not file this contract or the extensions with its complaint.  Given the absence of a protective order, Defendants will do the same and will work with EMI to ensure that the documents are filed with the Court under seal by the time EMI's response is due.

It requires Mr. West to deliver to EMI—and only EMI—the publishing rights to every song Mr. West writes during that "Term."  *See* 2003 Agreement ¶ 2.01.

Under the 2003 Agreement, Mr. West agreed to write and deliver to EMI a minimum number of new songs (or "Compositions") every "Contract Year" (as EMI defined that term and as discussed below) that were good enough to be chosen to be recorded on an album released by one of the major record companies.  If those albums were successful enough, EMI would pay "royalties" to Mr. West, as defined in the contract.  EMI agreed to pay Mr. West an advance of a few hundred thousand dollars against those potential royalties.

When EMI put that in writing, it was not nearly that simple.  The 2003 Agreement is 45 pages long and contains dozens of provisions.  EMI defined key terms to mean something other (or more) than what one would expect them to mean in plain English.  In so doing, EMI placed significant, additional burdens on Mr. West's work.  The 2003 Agreement's "Term" consists of three "Contract Years" plus one optional "Contract Year."  *See* 2003 Agreement ¶¶ 3.02 & 3.03. The contract requires Mr. West to write and deliver to EMI, in each "Contract Year" during the "Term," at least three "Full New Compositions."

As defined by EMI, the term "Full New Compositions" does not mean merely an original song that Mr. West has written during the contract term.  Each such song must also be "embodied" on a studio (as opposed to a concert) record album having a playing time of at least 35 minutes, released by one of a handful of listed "Major" record labels, during the applicable "Contract Period."  *See* 2003 Agreement ¶¶ 1.03, 1.09 & 4.01.  In addition, a "Composition" counts only if the record company has agreed to pay a specific, minimum mechanical royalty for the use of his composition.  *See* 2003 Agreement ¶ 4.01(b).

EMI defined the word "Full" (as used in the term "Full New Compositions") to impose additional requirements on Mr. West.  "Full" means that, if Mr. West is not recognized as the sole writer of the composition, that composition counts towards his minimum number only as to the fractional amount of credit Mr. West receives for it.  But under the contract, EMI further reduced the credit for such a song, using a formula tilted in EMI's favor.  *See* 2003 Agreement ¶¶ 4.01 & 5.04(b).  In a business where a song written by one person often gets added to by others during the studio recording process, that can mean that Mr. West has to write and have recorded many more than three new songs in a "Contract Year" to satisfy EMI.

To determine how long Mr. West is required to render his services exclusively to EMI, the 2003 Agreement defines the term "Contract Year" to mean something more than 12 months.  To EMI, a "Contract Year" means the **longer** of either 12 months from the commencement of that "year" or **however long** it might take Mr. West to write the minimum number of qualifying songs required of him in any "Contract Year."  *See* 2003 Agreement ¶ 3.04.  Thus, if in a given "Contract Year" Mr. West is required to write three "Full New Compositions," that contract year would span **at least** 12 months from when it began.  But for purposes of determining the term of Mr. West's servitude to EMI, that "year" would not actually end until Mr. West wrote and delivered to EMI the last of those three "Full New Compositions," that is, until major record companies released enough studio albums containing enough songs, written in whole or in part by Mr. West, that added up, under EMI's song credit formula, to three such "Full New Compositions."  Depending on numerous factors beyond Mr. West's contract, that could take one calendar year, two calendar years, or many more calendar years.  As a result, EMI could purport to require Mr. West to continue to render exclusive services to EMI for years, perhaps even for the rest of his life.

EMI's ownership interest in Mr. West's songs was not confined to those that were eventually recorded.  Instead, EMI obtained ownership of *every* song Mr. West would write during the Term, regardless of whether it was recorded on an album released by a major record company, recorded on an album released by some other company, or never recorded by anyone. EMI owns them all.  *See* 2003 Agreement ¶¶ 2.01, 5, 8.01. Nor do EMI's rights end at the end of the contract's "Term."  No matter when the contract term ends, the contract states that EMI retains its rights to all new compositions for the *longer* of 12 years (later reduced to 10 years), or when EMI has recouped all advances it made to Mr. West, or when he has paid EMI 120% of all unrecouped advances.  *See* 2003 Agreement ¶ 7.01(a)-(c).  Only then, if ever, do the publishing rights to Mr. West's compositions revert to him.

### C.   The 2003 Agreement Extensions

Mr. West's career exploded after the February 2004 release of his first album, *College Dropout*.  Over the next nine years, he released five new studio albums that sold millions of copies.  He became one of the most influential and successful entertainers anywhere.  Mr. West wrote many of the songs on those albums, and wrote more during these years for others to record.  None of this escaped EMI's attention.  At every turn, it sought to extend the term of its exclusive control over Mr. West's songwriting services and, as alleged in more detail below, EMI did so knowing that it was violating Mr. West's rights under California law.

EMI extended the term of Mr. West's services in 2005, 2006, 2009, 2011, and 2014. Each time it added to the number of "Contract Years" during which Mr. West was required to compose and record new music for EMI to publish.  EMI also increased the number of Compositions that Mr. West had to write and record.  From 2003 until 2019, there has been no point at which Mr. West was not under contract to write and record exclusively for EMI.  That is

far more than the seven-year-limit the California Legislature established through Labor Code Section 2855.

Starting with the 2006 extension, EMI inserted a paragraph in the contract that reflects EMI's awareness that its contract with Mr. West violated California public policy, and particularly the Seven Year Rule embodied in California Labor Code section 2855.  Paragraph 10 in pertinent part disclaims that "for purposes of California law," neither the 2003 Agreement nor the 2006 extension "constitute contracts for any of your personal services."  Instead, the contract requires Mr. West merely to "deliver" to EMI his ownership interest in the songs he writes.  It states further that Mr. West would not "make any claims that you are not required, under California law or otherwise, to fulfill all obligations set forth in the [2003 Agreement] and/or this Modification."  And it says that Defendants "acknowledge that this paragraph is to avoid compromise of [EMI]'s rights by reason of a finding of applicability of California law but does not contain an admission by [EMI] that California law is actually applicable."  *See* 2006 Extension ¶ 10.

In addition, the waiver EMI sought to obtain is itself unlawful.  The California Court of Appeal held nearly 70 years earlier that such employer-inserted clauses were unenforceable.  *See De Havilland v. Warner Bros.*, 67 Cal. App. 2d 225, 236 (1944) (the rights granted an employee under Section 2855 "may not be contravened by private agreement").  That is still the law today.

Not only are these provisions unenforceable, they are comically inconsistent with a paragraph in the contract that appears right above it.  Whereas EMI sought in paragraph 10 to avoid application of Labor Code Section 2855 to Mr. West's services by writing that the contract did not constitute one for his personal services, EMI took the opposite position in paragraph 8:

> You (Mr. West) hereby represent and warrant to [EMI] that You will, throughout the entire Term as extended by this Modification, remain actively involved in

8

writing, recording and producing Compositions and Major Label Albums, as Your principle occupation.  At no time during the Term will you seek to retire as a songwriter, recording artist or producer or take any extended hiatus during which you are not actively pursuing Your musical career in the same basic manner as You have pursued such career to date.  (The preceding representation shall not be deemed to prevent You from taking a vacation of limited duration.)

EMI would have had no interest in ensuring that Mr. West continued to write, record, and produce songs, and continue to "actively" pursue his music career, unless it was party to a contract with Mr. West that required him to render personal songwriting, recording, and producing services.  Under the 2003 Agreement, only Mr. West can discharge the songwriting obligations.  A song written by anyone else does not satisfy his obligations to EMI.

Other aspects of the 2003 Agreement make clear that it is an agreement for Mr. West's personal services and not merely for the "delivery" of "rights."  For example, it states that, if Mr. West desires during the Term to write new compositions for use in a movie or TV program, EMI shall "furnish Your writing services on a 'loan out' basis to write such Film music."  *See* 2003 Agreement ¶ 8.05(d).  Another provision gives EMI the right to secure insurance securing Mr. West's life and capacity, and to require Mr. West to attend any reasonable medical examinations required by the insurer.  *See id.* ¶ 15.01.  These are expected provisions of a personal services agreement, particularly one where the services are valuable and unique.

The statement in paragraph 10 of the 2006 Extension that disclaims that Mr. West is rendering personal services is thus a mere fiction, invented by EMI to attempt to avoid the fact that the contract requires Mr. West to render personal services to EMI, and that EMI was planning to have Mr. West do so for more than seven years.

### D.    Procedural History

On January 25, 2019, frustrated by his unending servitude to EMI, Mr. West, along with Please Gimme, West Brands, and Ye World, filed a complaint in the Superior Court of the State

of California for Los Angeles County.  The complaint sought declaratory relief, restitution and constructive trust based on the fact that the EMI agreements were void and unenforceable as against California public policy by seeking to obligate Mr. West to render personal services for beyond seven years and that the intellectual property rights to Mr. West's music should revert to him, not EMI.[3]  On March 1, 2019, EMI removed the case to the Central District of California, with Docket Number 2:19-cv-01527-MRW ("California Action").  To facilitate a business resolution of the matter, the parties obtained a stay, which has been extended until July 15. Defendants dispute that Plaintiffs had grounds to remove the case on the basis of either diversity of citizenship or federal question jurisdiction, and intend to file a Motion to Remand the case to California state court should an agreement not be reached.

On March 7, 2019, more than five weeks after Mr. West filed his complaint in California, and several days after EMI removed it, EMI filed this counter-suit in the Southern District of New York ("New York Action").  The complaint seeks a declaratory judgment that the EMI Agreement is an enforceable contract governed by New York, not California law, that EMI retains copyright interests and all other rights in Mr. West's music, and that Mr. West has no right to litigate the claims at issue in California.  Again to explore settlement, the parties stipulated to a stay of the California and New York Actions in March 2019.   The Court extended the deadline to file responsive motions to June 20, 2019.

---

[3]  That same day, Defendants filed a redacted complaint against EMI in the Los Angeles County Superior Court.  EMI also removed that case, assigned Case Number 2:19-cv-01533.  That complaint was voluntarily dismissed, without prejudice, on March 15, 2019.

<u>LEGAL DISCUSSION</u>

**I.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLEASE GIMME IS A NON-DIVERSE INDISPENSABLE PARTY**

The Complaint should be dismissed for failure to join an indispensable party whose joinder would destroy diversity jurisdiction.  A motion to dismiss on this basis is analyzed in two steps, each of which Defendants satisfy.  "First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)."  *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000) (quotations and citations omitted).  Second, "where the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional … reasons, the court must … determine whether the party is 'indispensable.'" If so, the party is indispensable, then the court must dismiss the action pursuant to Rule 19(b)."  *MasterCard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*, 471 F.3d 377, 386-87 (2d Cir. 2006).

Please Gimme is a necessary party because, as Plaintiffs concede, Compl. ¶¶ 15 & 15 n.1, it is a party to the contracts on which EMI has sued.  *E.g.*, *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997) (collecting cases); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991) ("[A] contracting party is the paradigm of an indispensable party.").  That Please Gimme has been dissolved, Compl. ¶ 15 n.1, is of no moment: a dissolved New York corporation can be sued, and in such suits its citizenship will weigh in the jurisdictional analysis.  *See Torelli v. Torelli*, 941 F. Supp. 36, 39 (S.D.N.Y. 1996) ("[T]he corporation, although dissolved, … is a necessary party to this action."); *Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1107–08 (N.D.N.Y. 2003) ("The corporate dissolution does not prevent Race Safe from bringing this action. Rule 17(b) of the Federal Rules of Civil Procedure applies to dissolved … corporations[.]").

11

EMI knows this.  In past cases that it prosecuted on behalf of Mr. West and Please Gimme, EMI repeatedly stated, in signed writings filed in court, that Please Gimme continues to own copyrights to certain of Mr. West's songs created under the contract at issue here.  *See* Compl., 6:12-cv-00256-MHS (E.D. Tex. Apr. 10, 2012), ECF No. 1 ¶ 10 ("Plaintiff Please Gimme My Publishing Inc. is a corporation. This Plaintiff is the owner of a copyright in at least one of the songs in this action."); Compl., 1:11-cv-05629 (N.D. Il. Aug. 17, 2011), ECF No. 1 ¶ 13 ("Plaintiff Please Gimme My Publishing Inc. is a corporation. This Plaintiff is the copyright owner of at least one of the songs in this matter."); Compl., 11-cv-61158 (S.D. Fl. May 18, 2011) ECF No. 1 ¶ 11 (similar).  Further, as recently as December 2016, EMI filed an Answer in this District acknowledging that Please Gimme *continues to exist as a New York corporation*.  *See* Answer, 1:16-cv-03798-LAK (S.D.N.Y. Dec. 2, 2016) ECF No. 24 ¶ 11 ("Defendants [including EMI] admit that Please Gimme My Publishing Inc. is a New York corporation").  This admission is fatal. EMI may not disavow its statements because they are inconvenient for its purposes here.

That ends the Court's jurisdiction over the dispute.  It is not feasible to join Please Gimme to this suit because its joinder would destroy diversity jurisdiction.  Please Gimme is a New York corporation, Compl., ECF No. 1-1, ¶ 10, and Plaintiff EMI likewise has New York citizenship for diversity purposes, *id.* ¶ 3 (EMI has its principal place of business in New York ); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").  Because Please Gimme and EMI thus each have New York citizenship, the joinder of necessary party Please Gimme to this suit would destroy diversity jurisdiction.  *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) (diversity jurisdiction under 28 U.S.C. § 1332(a)(1) requires "complete diversity, i.e., that each plaintiff's citizenship must be

different from the citizenship of each defendant"); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) (similar). Thus, the Complaint must be dismissed for lack of subject matter jurisdiction if Please Gimme is not only a necessary party but also an indispensable party under Fed. R. Civ. P. 19(b). *See Visión en Análisis y Estrategia, S.A. v. Andersen*, 662 F. App'x 29, 31–32 (2d Cir. 2016).

Please Gimme is also indispensable. "The Second Circuit has restated the Fed. R. Civ. P. 19(b) standards of whether a party is 'indispensable' as: '(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.'" *2 Montauk Highway LLC v. Glob. Partners LP*, 296 F.R.D. 94, 99 (E.D.N.Y. 2013) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 133 (2d Cir. 2013)).

All four factors point to Please Gimme's indispensability. Please Gimme would be prejudiced by a judgment declaring its rights under the contracts, and this prejudice cannot be alleviated by shaping a judgment. *See Shimkin v. Tompkins, McGuire, Wachenfeld & Barry*, 2003 WL 21964959, at *4 (S.D.N.Y. Aug. 19, 2003) (in the course of dismissing action for failure to join contract party whose joinder would destroy diversity jurisdiction, holding "[t]he prejudice here arises from the inability of the [absent necessary parties] to protect their rights under the … agreements or their potential right to the possession or control of the Clarification Letter."). But EMI can still obtain the remedies it seeks under the contract if this action is dismissed, as an alternate State forum (in California) is available. *Id.* (similar reasoning); *see* Dkt. 1-1 (California Complaint). Because Please Gimme is necessary and indispensable to this

13

suit and its joinder would defeat diversity jurisdiction, this action should be dismissed without prejudice in favor of the Action in California.

## II.     THE COMPLAINT SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*

The Second Circuit has adopted a three part inquiry for determining whether a court will decline to adjudicate a case based on the doctrine of *forum non conveniens*:

> [A] court considers (1) the degree of deference to be afforded to the plaintiff's choice of forum; (2) whether there is an adequate alternative forum for adjudicating the dispute; and (3) whether the balance of private and public interests tips in favor of adjudication in one forum or the other.

*See Iragorri v. United Techs. Corp*., 274 F.3d 65, 72-76 (2d Cir. 2001).  *Accord Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 334 n.12 (2d Cir. 2016).  Each of these factors compels this Court to decline to hear Plaintiffs' lawsuit.

*Lack of Deference*:  A plaintiff's choice of forum is not entitled to any deference unless it is motivated by reasons that New York law recognizes as valid.   *Iragorri*, 274 F.3d at 71-72 ("The degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale" depending on the degree of convenience and "the more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid").  Courts give less deference to the plaintiff's choice of forum where it appears to be motivated by forum-shopping reasons, such as "attempts to win a tactical advantage resulting from local laws that favor the plaintiff." *Id*. at 72. That is the case here.  EMI deliberately selected a forum that lacks the legal protections that the California Legislature enacted to prohibit personal services contracts from lasting more than seven years.  *See*, *e.g.*, *LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246 (S.D.N.Y. 2007) (granting motion to dismiss for forum non conveniens and finding deference to a plaintiff's choice of forum is "diminished when 'plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts'").

This motivation is evidenced by the attempted work-arounds that EMI drafted into the contract, stating that "for purposes of California law," neither the 2003 Agreement nor the Extensions "constitute contracts for any of your personal services." Compl. ¶ 22; Compl., Ex. A ¶ 41. Conscious that courts would question EMI's attempt to avoid California law, the contract states also that the paragraph does "not constitute a concession by [EMI] that California law is actually applicable."

*Existence of Adequate Alternative*:  This factor also supports Mr. West.  EMI's selected forum is inconvenient for him.  He lives and has created and recorded the compositions due under the contract in California.  *See* West Decl. ¶¶ 5, 9.  California courts provide an adequate alternative forum.  Indeed, EMI regularly litigates there.  Mr. West is "amenable to process" in California and California courts provide a forum for EMI.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (a suitable alternative forum exists where the defendant is "amenable to process" and the alternative forum can provide a satisfactory remedy to the plaintiff"); *Turedi v. Coca Cola Co.,* 460 F. Supp. 2d 507 (S.D.N.Y. 2006) (granting dismissal for *forum non conveniens*, finding Turkey an "adequate forum for adjudication" because defendant was based in Turkey and therefore amenable to process there, and the adequacy of a forum does not depend on the availability of causes of action identical to those in the United States), *aff'd sub nom.*, 343 F. App'x 623 (2d Cir. 2009).  In fact, EMI can refile its lawsuit in California or stylize it as a Counter-Claim in response to Mr. West's lawsuit.  In any case, the key issues EMI has raised here are already at issue in the case pending in California.

*Public and Private Factors*:  Both the private and public interest factors weigh in favor of dismissal.  The private factors address the litigants and consider the (1) ease of access to evidence; (2) cost for witnesses to attend trial; (3) availability of compulsory process, and (4)

other factors that affect the efficacy of the litigation. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001). Here, both parties live or maintain offices in California. Mr. West has lived in California since the early 2000s. California is where he primarily works and writes the compositions that are the subject of the dispute. *See*, *e.g.*, *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 230 (S.D.N.Y. 2007) (dismissing for *forum non conveniens* a suit brought by a Delaware liquidating trust against a Swiss bank based on the stronger public interest of Switzerland in regulating the conduct of defendants).

The public factors also support granting the motion. Given that Mr. West is based in California and works there, there is a significant public interest in having the case decided in California, where California law, implementing strong public policy considerations, will, and should, govern the case. There has already been extensive media coverage of the dispute and the consequences of the adjudication of Seven Year Rule issue on contracts throughout the music industry. In addition, the public has a real interest in reducing judicial inefficiency arising from parallel proceedings in courts located in two different states. The Southern District of New York is "one of the busiest in the country" making it a paradigmatic "congested center" of litigation alluded to in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). *Tel. Sys. Int'l, Inc. v. Network Telecom PLC*, 303 F. Supp. 2d 377, 384 (S.D.N.Y. 2003); *see also Flores v. Southern Peru Copper Corp.*, 253 F.Supp. 2d 510, 543 (S.D.N.Y. 2002) (granting dismissal for *forum non conveniens* based on substantial private interest factors, including location and language of witnesses, as well as public interest factors, such as court congestion and juror's lack of connection to the dispute).

**III.    THE COURT SHOULD DISMISS, STAY, OR TRANSFER THIS ACTION IN FAVOR OF THE CALIFORNIA ACTION BASED ON FIRST TO FILE RULE**

Mr. West's California lawsuit takes priority over this one.  Where proceedings involving the same parties and issues are pending simultaneously in different federal courts, the first-filed of the two takes priority absent "special circumstances" or a balance of convenience in favor of the second.  *See First City Nat. Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989); *see also William Gluckin & Co. v. Int'l. Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969).  The presumption is that "the court which first has possession of the action decides it." *800–Flowers, Inc. v. Intercontinental Florist, Inc*., 860 F.Supp. 128, 131 (S.D.N.Y. 1994).  "[A]n 'ample degree of discretion' is afforded to the district courts in determining a suitable forum." *First City Nat. Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (holding district court "did not abuse [its] ... discretion in applying the first to file rule" to dismiss suit).[4]  This Action should be dismissed or stayed in favor of the California Action. See *800–Flowers, Inc. v. Inter. Florist, Inc*., 860 F.Supp. 128, 131 (S.D.N.Y. 1994) (finding motion to dismiss or stay under Fed. R. Civ. P. 12(b)(1) or (b)(3) proper).  Alternatively, for these same factors, a transfer to the Central District of California would be appropriate to consolidate both cases.

Here, Mr. West sued first, in California, on January 25, 2019, well before EMI initiated this Action on March 7, 2019.  Compl. ¶ 2.  Indeed, EMI even attached the California Complaint to its pleadings, only reinforcing that these proceedings involve the same parties and issues.

---

[4]  Abstention is also warranted at least as to Plaintiffs' declaratory relief claim under the Wilton-Brilhart abstention doctrine. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). Abstention is clearly warranted where, as here, complete relief between the parties can be provided in another forum in which an earlier-filed action raising the same legal issues is already pending.  *Ace Am. Ins. Co. v. Graftech Int'l Ltd.*, No. 12-CV-6355 RA, 2014 WL 2884681, at *4 (S.D.N.Y. June 24, 2014) (dismissing declaratory judgment claim that was duplicative of earlier-filed suit).

Compl. ¶ 34 & Ex. A ("CA Complaint").  The California Action is currently pending in federal

court in the Central District of California.  *See Please Gimme My Publishing, v. EMI April

Music, Inc.*, 19-cv-01527-DMG-FFM (C.D. Cal.).[5]  Given that Mr. West filed more than five

weeks before EMI in California, the California Action has priority.  *See Citigroup Inc. v. City

Holding Co.*, 97 F. Supp. 2d 549, 556 (S.D.N.Y. 2000) (giving first-filed priority to complaint in

case filed five weeks before second-filed complaint).

The "first-filed rule" preserves judicial economy and comity.  *See Simmons*, 878 F.2d at

80.  Staying the later-filed action prevents the inefficiency and wastefulness of allowing

duplicative litigation to proceed in two different fora.  *See, e.g., Regions Bank v. Wieder &

Mastroianni*, P.C., 170 F. Supp. 2d 436, 441 (S.D.N.Y. 2001) (staying action in favor of first-

filed action and noting that "[a]ny prejudice resulting from such delay is greatly outweighed by

considerations of judicial economy and avoiding unnecessary litigation expenses for the

parties");  *Mr. Bar-B-Q, Inc. v. Jaccard Corp.*, 2009 WL 10709161, at *2 (E.D.N.Y. July 8,

2009) (granting stay in favor of first-filed action); *see also AEP Energy Servs. Gas Holding Co.

v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) ("Deference to the first filing embodies

considerations of judicial administration and conservation of resources and recognizes that a

party who first brings an issue into a court of competent jurisdiction should be free from the

---

[5]   The first-to-file doctrine applies to concurrent federal litigation. While Defendants continue to
assert that the proper forum is California state court, the California Action pending in federal
court is properly considered a concurrent federal litigation for first-filed purposes. *See
Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 n. 9 (S.D.N.Y. 2001) ("Moreover, the
[first-to-file] doctrine does apply in cases where the first filed suit was originally filed in state
court but subsequently removed to federal court after the parallel federal suit had been filed but
prior to the motion to dismiss."); *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp.
128, 131 n.1 (S.D.N.Y. 1994) (dismissing action in favor of earlier-filed action initially filed in
state court and then removed to federal court).

vexation of concurrent litigation over the same subject matter." (internal quotations and citations omitted)).

So too here.  There are substantial witnesses in California, particularly Mr. West.  EMI maintains executives and offices, and conducts extensive business activities in Los Angeles. Also, substantial questions of California law must be resolved to resolve this dispute.  These factors overwhelmingly favor California.  See *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 657 (S.D.N.Y. 1998) ("Virtually all the witnesses with knowledge reside in California. . . . . Thus, for the convenience of the key witnesses, it is in the interests of justice to transfer the action.").

Comity favors allowing a California court to decide these issues in the first instance. The prejudice to Mr. West of having a New York court decide issues of California law far outweighs any to EMI.  And the Central District of California and the California Superior Court are adequate forums to decide these issues.  In fact, EMI regularly litigates there.

Alternatively, if the Court does not dismiss or stay this Action, a transfer to the Central District of California, where the case is pending, is appropriate under 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of justice."[6]  "The factors that guide that analysis include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Citigroup*, 97 F. Supp. 2d at 560-61.

---

[6]  In requesting transfer, Defendants do not concede federal court jurisdiction and believe state court is the appropriate forum to adjudicate this dispute.

Each of these weigh in favor of a transfer.  Both EMI and Mr. West are located in California, where process is available.  The crucial documents are located in California.  Both parties have relative means, although EMI is one of the largest music companies in the world. The disparity between resources therefore strongly weighs in Mr. West's favor and in favor of a transfer (if not a dismissal or stay).  And indeed, "interests of justice" based on the totality of the circumstances strongly favors one proceeding—the California Action—where all of the parties are present before one Court.  S*ee Travelers Indemnity Company et. al v. Crown Cork & Seal Company. Inc.*, 865 F.Supp. 1083, 1090 (S.D.N.Y. 1994).

## IV.   A STAY IS ALSO WARRANTED BASED ON PUBLIC POLICY AND CONSERVATION OF JUDICIAL RESOURCES

Should the Court decline to dismiss or transfer the case, the Court should at least stay the litigation, pending resolution of Mr. West's California lawsuit. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co*., 299 U.S. 248, 254 (1936).  Because it would be a waste of judicial resources to sustain duplicative litigation, the Court should stay this case.

When determining whether to grant a stay, courts in the Second Circuit consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Royal Park Investments SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) (citing *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co.*, 2005 WL 912184, at *1 (S.D.N.Y. Apr. 19, 2005)).  Each of these factors weighs in favor of a stay.

*First*, EMI's interests in proceeding expeditiously with the civil litigation will not be prejudiced because EMI can proceed in California, where it has a substantial business presence.

*Second*, as noted above, the burden on Mr. West is substantial given that California law applies and that he has established himself in California, where he maintains his home, businesses and family.  By having to litigate both in this court and in California, Mr. West will be forced to engage in duplicative discovery and motions.

*Third*, as noted above, the California courts have a substantial interest in resolving issues of California state law.  *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.,* 840 F.Supp. 211, 217 (E.D.N.Y. 1994).

*Finally*, the public interest weighs in favor of a stay because it will allow the Court to conserve judicial resources and attend to other, non-duplicative cases.  *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 306 (S.D.N.Y. 2009).

## <u>CONCLUSION</u>

For the foregoing reasons, there is no proper or compelling basis for this Court to adjudicate this dispute.  Mr. West respectfully requests that the Court dismiss or stay this action.

Date:  June 21, 2019

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:      /s/ John B. Quinn

John B. Quinn (N.Y. Bar No. 90378)
Crystal Nix-Hines (N.Y. Bar No. 248207) (*Pro hac vice*
application pending)
Kimberly E. Carson (N.Y Bar No. 5120258)
51 Madison Avenue, 22nd Floor
New York, New York  10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
johnquinn@quinnemanuel.com
crystalnixhines@quinnemanuel.com
kimberlycarson@quinnemanuel.com

Robert M. Schwartz (*Pro hac vice* application pending)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
robertschwartz@quinnemanuel.com

*Attorneys for Defendants Kanye West and West Brands, LLC*