UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMI APRIL MUSIC INC. and EMI BLACKWOOD MUSIC INC., <br><br> Plaintiffs, <br><br> -against- <br><br> KANYE WEST, an individual, and WEST BRANDS, LLC, a Delaware limited liability corporation, individually and d/b/a YE WORLD PUBLISHING and PLEASE GIMME MY PUBLISHING, <br><br> Defendants. | 19 Civ. 02127 (VEC) <br><br> ECF CASE |

**MEMORANDUM OF LAW OF PLAINTIFFS EMI APRIL MUSIC INC. AND EMI BLACKWOOD MUSIC INC. IN OPPOSITION TO <u>MOTION TO DISMISS, TRANSFER, OR STAY THE COMPLAINT</u>**

MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
(212) 790-4500

*Attorneys for Plaintiffs*
*EMI April Music Inc. and EMI Blackwood Music Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

ARGUMENT ............................................................................................................ 7

I.     THE COURT SHOULD REJECT DEFENDANTS' JURISDICTIONAL
CHALLENGE BECAUSE PLEASE GIMME IS NOT A NECESSARY OR
INDISPENSABLE PARTY ............................................................................. 7

     A.    Please Gimme Is Not A Necessary Party Because It Does Not Exist ............... 7

     B.    Assuming, *Arguendo*, That Please Gimme Is A Necessary Party (And It Is
Not), It Nevertheless Is Not An Indispensable Party ..................................... 11

II.    DEFENDANTS' *FORUM NON CONVENIENS* THEORY IGNORES THE
FACTS AND LAW, AND SHOULD BE REJECTED IN ITS ENTIRETY ................ 12

     A.    Defendants Waived Any Right They Had To *Forum Non Conveniens*
Relief .......................................................................................................... 13

     B.    Defendants' *Forum Non Conveniens* Theory Is Also Procedurally
Defective ..................................................................................................... 14

     C.    In Any Event, The *Forum Non Conveniens* Theory Fails On The Merits .......... 14

          1.    The Exclusive New York Forum Selection Clause Is Valid ................... 15

          2.    *Atlantic Marine* Requires That This Action Remain In The SDNY ........ 18

III.   THE FIRST-FILED RULE DOES NOT APPLY DUE TO DEFENDANTS'
GAMESMANSHIP AND FORUM SHOPPING IN THE CALIFORNIA
ACTION ....................................................................................................... 20

IV.   NO HARDSHIP OR INEQUITY JUSTIFIES A STAY OF THIS CASE ..................... 23

CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*,
  140 B.R. 56 (S.D.N.Y. 1992)..................................................................10

*Assoc. Dry Goods Corp. v. Towers Fin. Corp.*,
  920 F.2d 1121 (2d Cir. 1990)...............................................................11

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
  571 U.S. 49 (2013)........................................................................... passim

*Avlon v. 829-31 Rest. Corp.*,
  Case No. 92 CIV. 9372, 1993 WL 403982 (S.D.N.Y. Oct. 5, 1993) .......................8

*The Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972).................................................................................19

*Capitol Records, Inc. v. Mercury Record Corp.*,
  109 F. Supp. 330 (S.D.N.Y. 1952) .........................................................9

*Carematrix of Mass., Inc. v. Kaplan*,
  385 F. Supp. 2d 195, 198 (S.D.N.Y. 2005)..............................................15, 16, 17

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ................................................................21

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)....................................................................2

*City of N.Y. v. Exxon Corp.*,
  932 F.2d 1020 (2d Cir. 1991)..................................................................20

*Cohen v. Heussinger*,
  Case No. 89 CIV. 6941, 1994 WL 240378 (S.D.N.Y. May 26, 1994)....................9

*Cusano v. Horipro Entm't Grp.*,
  301 F. Supp. 2d 272 (S.D.N.Y. 2004)......................................................10

*Dornoch Ltd. v. PBM Holdings, Inc.*,
  666 F. Supp. 2d 366 (S.D.N.Y. 2009).....................................................21

*Durant v. Traditional Invs., Ltd.*,
  135 F.R.D. 42 (S.D.N.Y. 1991) ..............................................................9

*Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*,
  522 F.3d 271 (2d Cir. 2008)....................................................................20, 22

*Encompass Aviation, LLC v. Surf Air Inc.*,
  Case No. 18-CV-5530, 2018 WL 6713138 (S.D.N.Y. Nov. 30, 2018)................13, 14, 16, 19

*Envirotech Corp. v. Bethlehem Steel Corp.*,
  729 F.2d 70 (2d Cir. 1984)......................................................................11

*Everest Cap. Ltd. v. Everest Funds Mgmt., LLC*,
  178 F. Supp. 2d 459 (S.D.N.Y. 2002).....................................................21

**TABLE OF AUTHORITIES**
**(continued)**

Page

*F.D.I.C. v. Huntington Towers, Ltd.*,
   443 F. Supp. 316 (E.D.N.Y. 1977) ........................................................................9

*Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
   960 F. Supp. 701 (S.D.N.Y. 1997) ......................................................................9

*Gottwald v. Sebert*,
   Case No. 653118/2014, 2017 WL 1062924 (N.Y. Sup. Ct.
   Mar. 20, 2017)...............................................................................................16, 17

*ICICI Bank Ltd. v. Essar Glob. Fund. Ltd.*,
   565 B.R. 241 (S.D.N.Y. 2017)..........................................................................13

*In re Residential Capital, LLC*,
   Case No. 12-12020, 2014 WL 3057111 (Bankr. S.D.N.Y. July 7, 2014) ..............10

*In Re Residential Capital, LLC*,
   Case No. 14CV4950, 2014 WL 4652664 (S.D.N.Y. Sept. 10, 2014) ....................13

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir. 1989) ..........................................................................21

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.*,
   112 F.3d 70 (2d Cir. 1997)................................................................................18

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001).............................................................................18, 22

*Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*,
   815 F.2d 240 (2d Cir. 1987)..............................................................................12

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).........................................................................................23

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014)..............................................................................15

*Marvel Characters, Inc. v. Kirby*,
   726 F.3d 119 (2d Cir. 2013)..............................................................................10

*MEI Techs., Inc. v. Detector Networks Int'l, LLC*,
   Case No. CV 09-042, 2009 WL 10665141 (D.N.M. July 6, 2009) ......................21

*Michael Miller Fabrics, LLC v. Studio Imports Ltd.*,
   Case No. 12 CV 3858, 2012 WL 2065294 (S.D.N.Y. June 7, 2012) ....................20

*Ministers & Missionaries Benefit Bd. v. Snow*,
   45 N.E.3d 917 (N.Y. Ct. App. 2015) ..............................................................17, 20

*Moran Enters., Inc. v. Hurst*,
   66 A.D.3d 972 (N.Y. App. Div. 2009) ..................................................................8

*Motion Picture Lab. Techs. Local 780 v. McGregor & Werner, Inc.*,
   804 F.2d 16 (2d Cir. 1986)................................................................................20

## TABLE OF AUTHORITIES
### (continued)

**Page**

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)..................................................................................12

*Nelligan v. Cmty. Gen. Hosp. of Sullivan Cty.*,
   240 F.R.D. 123 (S.D.N.Y. 2007) .........................................................................11

*On-Line Techs. v. Perkin Elmer Corp.*,
   141 F. Supp. 2d 246 (D. Conn. 2001)....................................................................9

*PB Farradyne, Inc. v. Peterson*,
   Case No. C 05-3447, 2006 WL 132182 (N.D. Cal. Jan. 17, 2006) ......................10

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..............................................................................................19

*Riviera Trading Corp. v. Oakley, Inc.*,
   944 F. Supp. 1150 (S.D.N.Y. 1996)......................................................................21

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)................................................................................15

*Royal Park Invs. SA/NV v. Bank of Am. Corp.*,
   941 F. Supp. 2d 367 (S.D.N.Y. 2013)...................................................................23

*Spector v. Soc. Standards, Inc.*,
   Case No. 17 Civ. 4023, 2017 WL 9565760 (S.D.N.Y. Sept. 7, 2017) ..................16

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)................................................................................................13

*Tr. of Constr. Indus. & Laborers Health & Welfare Tr. v. C & W Enters., Inc.*,
   298 F. App'x 566 (9th Cir. 2008) .........................................................................10

*Travelers Indem. Co. v. Household Int'l Inc.*,
   775 F. Supp. 518 (D. Conn. 1991)..........................................................................9

*Viacom Int'l, Inc. v. Kearney*,
   212 F.3d 721 (2d Cir. 2000)....................................................................................7

### STATUTES

28 U.S.C. § 1404(a) .................................................................................... passim

Cal. Lab. Code § 2855 ................................................................................ passim

N.Y. Bus. Corp. Law § 1006 ...............................................................................8

N.Y. Gen. Oblig. L. §§ 5-1401 & 5-1402...........................................................20

### OTHER AUTHORITIES

Wright, Miller & Kane, Fed. Prac. & Proc., Civil 2d § 1613 ..............................9

### RULES

Fed. R. Civ. P. 12(b)(6)......................................................................................14

Fed. R. Civ. P. 19.............................................................................................7, 9

## TABLE OF AUTHORITIES
### (continued)

**Page**

Fed. R. Civ. P. 19(a) ..................................................................................................7, 8

Fed. R. Civ. P. 19(a)(2)(ii) ..............................................................................................11

Fed. R. Civ. P. 19(b) ..................................................................................................7, 11

Plaintiffs EMI April Music Inc. ("EMI April") and EMI Blackwood Music Inc. ("EMI Blackwood") (collectively, "EMI") respectfully submit this memorandum of law in opposition to Kanye West's ("West") and West Brands, LLC's ("WB"), individually and d/b/a Ye World Publishing ("Ye World") and Please Gimme My Publishing ("Please Gimme") (collectively, "Defendants"), motion to dismiss, transfer, or stay the Complaint ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

EMI brought this lawsuit in response to Defendants' breach of their agreements with EMI.  In their Motion, Defendants double down on their efforts to renege on their contractual obligations to EMI, all while obfuscating the record, and trying to conceal their own improper forum shopping.  Defendants even go so far as to ignore or simply mention in passing multiple motion-dispositive issues, including that (i) the company they maintain destroys diversity jurisdiction was dissolved more than nine years ago, and had assigned all of its rights and obligations to the diverse Defendants here; (ii) they contractually agreed ***not*** to challenge suit in this Court on *forum non conveniens* grounds, or otherwise seek to transfer suit in this court for any reason to any other venue; and (iii) they are bound by the exclusive New York forum selection and New York choice of law clauses in the agreements at issue.  Defendants' cavalier approach to these issues demonstrates that their arguments have no merit or credibility.  Their Motion should be denied.

*First*, the Court has diversity jurisdiction because the parties are completely diverse, and because more than $75,000 is at issue.  Defendants' effort to destroy diversity by claiming that Please Gimme, a defunct New York corporation, is a necessary and indispensable party to this action is frivolous.  Not only has this company been dissolved since at least January 27, 2010, but it also assigned all of its rights and interests in the agreements at issue to WB – a named defendant here – long before any of the issues underlying this litigation arose.

*Second*, the exclusive New York forum selection and New York choice of law clauses in the agreements at issue and Defendants' express agreement not to challenge suit in this Court on *forum non conveniens* grounds or otherwise seek to transfer suit for any reason to any other

venue – none of which provisions Defendants address – foreclose their dismissal and transfer requests, and vitiate their forum shopping contentions against EMI.  In short, these express contractual terms confirm that any such dismissal or transfer is wholly unwarranted.

*Third*, Defendants' reliance on the "first-filed" rule to obtain dismissal of this action in favor of the action they wrongly filed in California a mere five weeks earlier is misplaced because the rule does not apply.  Indeed, by filing a state court complaint in California with Please Gimme as a named plaintiff and invoking California law, Defendants breached the parties' exclusive New York forum selection and New York choice of law provisions to prevent the federal and New York courts from hearing this dispute, and to secure benefits under California law to which they are not entitled.  Because the first-filed California action clearly was motivated by forum shopping, the first-filed rule does not give that action precedence.

*Fourth*, Defendants' stay request is groundless.  Defendants do not and cannot identify any legitimate hardship or inequity that they would suffer were this action to continue.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Exclusive New York Forum Selection Clause and New York Choice Of Law Clause

Effective October 1, 2003, West entered into an agreement with EMI (the "2003 Agreement") under which EMI acquired a 50 percent share of the copyrights in certain musical compositions written or co-written by West (the "Compositions") for a finite period of time. (Jacobs Decl. ¶ 2, Exh. A at ¶ 8.01)  In exchange for advance and royalty payments, West granted EMI the right to administer the Compositions during that period for West's and EMI's mutual benefit.  (Jacobs Decl. ¶ 2, Exh. A at ¶ 8.02)  After the 2003 Agreement, the parties entered into several agreements modifying and/or extending the 2003 Agreement (each a "Modification", and collectively, the "Modifications").[1]  Each Modification incorporates, ratifies, and confirms the 2003 Agreement and any preceding modifications.  (Jacobs Decl. ¶ 3,

---

[1] Because the Complaint refers to, incorporates, and relies heavily upon the terms and effect of the 2003 Agreement and Modifications, the Court properly may consider them in ruling on the Motion.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court may consider documents integral to the complaint).

Exh. B at ¶ 3; *id.* at ¶ 4, Exh. C at ¶ 6; *id.* at ¶ 5, Exh. D at ¶ 11; *id.* at ¶ 6, Exh. E at ¶ 9; *id.* at ¶ 7,

Exh. F at ¶ 10; *id.* at ¶ 8, Exh. G at ¶ 5; *id.* at ¶ 9, Exh. H at ¶ 11)  The 2003 Agreement and its

Modifications (collectively, the "Agreements") accurately reflect the parties' bargain.[2]  (*See*

Jacobs Decl. ¶ 2, Exh. A at ¶ 24.01)  As is relevant here, the 2003 Agreement includes an

*exclusive* forum selection clause (the "Exclusive New York Forum Selection Clause"), which

states in pertinent part:

> ANY CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT
> OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE
> INSTITUTED AND MAINTAINED EXCLUSIVELY IN ANY FEDERAL
> OR STATE COURT LOCATED WITHIN THE COUNTY OF NEW YORK
> IN THE STATE OF NEW YORK.

(Jacobs Decl. ¶ 2, Exh. A at ¶ 21.01)  The provision continues:

> YOU IRREVOCABLY SUBMIT TO THE PERSONAL JURISDICTION OF
> SUCH COURT, AND AGREE NOT TO ASSERT, BY WAY OF MOTION,
> AS A DEFENSE OR OTHERWISE, THAT (I) YOU ARE NOT SUBJECT
> PERSONALLY TO THE JURISDICTION OF SUCH COURT, (II) THE
> LITIGATION IS BROUGHT IN AN INCONVENIENT FORUM, (III) THE
> VENUE OF THE LITIGATION IS IMPROPER OR THE LITIGATION
> SHOULD BE TRANSFERRED FOR ANY REASON TO ANY OTHER
> VENUE, OR (IV) THIS AGREEMENT OR THE SUBJECT MATTER
> HEREOF MAY NOT BE ENFORCED IN OR BY SUCH COURT.

(*Id.*)  The 2003 Agreement also includes the following New York choice of law clause (the

"New York Choice Of Law Clause"):

> THIS AGREEMENT SHALL BE DEEMED ENTERED INTO IN THE
> STATE OF NEW YORK AND THE VALIDITY, INTERPRETATION AND
> LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY
> THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE
> TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY
> WITHIN THE STATE OF NEW YORK, WITH RESPECT TO THE
> DETERMINATION OF ANY CLAIM, DISPUTE OR DISAGREEMENT
> WHICH MAY ARISE OUT OF THE INTERPRETATION, PERFORMANCE
> OR BREACH OF THIS AGREEMENT OR WHICH IN ANY OTHER
> RESPECT RELATES TO THIS AGREEMENT.

---

[2] At each turn, seasoned and reputable music industry lawyers represented West, and negotiated the various agreements on his behalf.  (*See* Jacobs Decl. ¶ 2, Exh. A at 1, ¶ 24.01; *see generally* Jacobs Decl. ¶¶ 2-9, Exhs. A-H)

(*Id.* at ¶ 21.01)  Defendants agreed to the Exclusive New York Forum Selection Clause and the New York Choice Of Law Clause of the 2003 Agreement when West signed it, and again when West signed the seven Modifications that expressly ratified and confirmed the 2003 Agreement. (Jacobs Decl. ¶¶ 2-9, Exhs. A-H)  Notwithstanding these express provisions, Defendants mention them only *once* in the Motion, providing no acknowledgement that they were contractually bound by these provisions – but chose to ignore them – when they filed suit in California state court.[3]  (Mot. 3)

The Agreements have a strong connection to the State of New York for several other reasons as well.  *First*, except for the 2011 Modification, in connection with which West used California counsel, the Agreements were fully negotiated in the State of New York by West's counsel and EMI.  (Jacobs Decl. ¶ 2, Exh. A at 1; *id.* at ¶ 3, Exh. B at 1; *id.* at ¶ 4, Exh. C at 1; *id.* at ¶ 5, Exh. D at 1; *id.* at ¶ 6, Exh. E at 1; *id.* at ¶ 7, Exh. F at 1; *id.* at ¶ 8, Exh. G at 1; *id.* at ¶ 9, Exh. H at 1)  *Second*, EMI has its principal place of business in the State of New York.  (Jacobs Decl. ¶ 2, Exh. A at 1; *id.* at ¶ 3, Exh. B at 1; *id.* at ¶ 4, Exh. C at 1; *id.* at ¶ 5, Exh. D at 1; *id.* at ¶ 6, Exh. E at 1; *id.* at ¶ 7, Exh. F at 1; *id.* at ¶ 8, Exh. G at 1; *id.* at ¶ 9, Exh. H at 1)  *Third*, West executed and had the Agreements notarized in the State of New York, except the 2011 Modification, which he signed and had notarized in the State of Massachusetts.  (Jacobs Decl. ¶¶ 2-9, Exhs. A-H)  *Fourth*, the Agreements make clear that (i) the performance of West's obligations "will be deemed to have taken place in the State of New York, . . . regardless of where [West] reside[s] or where [West] created or acquired any or all [of the musical compositions due under the Agreements]" (Jacobs Decl. ¶ 2, Exh. A at ¶¶ 2.01, 2.02); (ii) West must deliver the Compositions to EMI in the State of New York (Jacobs Decl. ¶ 2, Exh. A at ¶ 1.06); (iii) except for the 2011 Modification and the 2012 Modification, which specify a Colorado address, all of the Agreements provide for West to receive all payments and notices under the Agreements in the State of New York (Jacobs Decl. ¶ 2, Exh. A at ¶ 18; *id.* at ¶ 3, Exh.

---

[3] Defendants merely note in passing that this action relies on the Exclusive New York Forum Selection Clause and the New York Choice Of Law Clause.  (Mot. 3)

B at ¶ 3; *id.* at ¶ 4, Exh. C at ¶ 6; *id.* at ¶ 5, Exh. D at ¶ 11; *id.* at ¶ 6, Exh. E at ¶ 9; *id.* at ¶ 7, Exh. F at ¶ 9; *id.* at ¶ 8, Exh. G at ¶ 4; *id.* at ¶ 9, Exh. H at ¶ 10); (iv) any audits of EMI's books and records that West undertakes must take place in the State of New York (Jacobs Decl. ¶ 2, Exh. A at ¶ 12.03(a)(iv));[4] and (v) the opening and closing times of EMI's offices in the State of New York determine the expiration of time periods in the Agreements (Jacobs Decl. ¶ 2, Exh. A at ¶ 23.11).

**Please Gimme's Dissolution**

In the 2004 Modification, Please Gimme, one of West's publishing designees, became a party to the 2003 Agreement.  (Jacobs Decl. ¶ 3, Exh. B at 1)  However, the Department of State of the State of New York's records confirm that Please Gimme was thereafter dissolved, and has remained so since at least January 27, 2010.  (Jacobs Decl. ¶ 10, Exh. I)  In fact, in the 2012 Modification, Defendants acknowledge (i) Please Gimme's dissolution, (ii) that all of Please Gimme's stock had been transferred to WB; and (iii) that "all rights, titles, interests and assets of . . . Please Gimme, including . . . all retained copyright interests in the Compositions . . . have been assigned and transferred to [WB] . . . the sole member of which is [West]."  (Jacobs Decl. ¶ 8, Exh. G at ¶¶ 2.01(a)-(b))  The 2012 Modification further confirms that Please Gimme is merely WB's d/b/a, and that Defendants expressly agreed that they will "not reinstate . . . Please Gimme as an independent corporate entity."  (Jacobs Decl. ¶ 8, Exh. G at ¶¶ 2.01(c), 2.03, 3.07)  In addition, the 2012 Modification and the 2014 Modification make clear that Please Gimme is included solely as WB's d/b/a.  (Jacobs Decl. ¶ 8, Exh. G at 1; *id.* ¶ 9, Exh. H at 1)

**Procedural History**

Notwithstanding the foregoing, on January 25, 2019, Defendants, as well as the defunct Please Gimme, sued EMI in California state court (the "California Action"), seeking, among other things, a declaration that (i) the 2003 Agreement and the Modifications are unenforceable, and have been for the last eight and a half years under California law; and (ii) EMI's bargained-

---

[4] These offices have since been moved to Nashville, Tennessee.

for copyright ownership and other rights in the Compositions should immediately revert to West. (Cplt. Exh. A, ¶¶ 1, 71)  By filing the California Action and seeking to apply California law to the Agreements, Defendants intentionally defied the parties' Exclusive New York Forum Selection Clause and New York Choice Of Law Clause.  Defendants' motivation in the California Action was simple:  they wanted to forum shop their way around such clauses to which they voluntarily agreed to be bound in order to seek the benefits of California Labor Code § 2855 ("Section 2855"), which makes "contract[s] for personal services" unenforceable after seven years.  (*Id.*; *see also* Mot. 9-10)  Even if Section 2855 were applicable here (and it is not because the Agreements are not personal services contracts), Defendants' Section 2855 claim would not have accrued until October 1, 2010 – seven years after the 2003 Agreement was entered into, and more than eight months after Please Gimme was dissolved.  Regardless, because the Agreements' Exclusive New York Forum Selection Clause and New York Choice Of Law Clause foreclose Defendants from prosecuting the California Action and relying on the Section 2855 to evade West's contractual commitments to EMI, EMI had no choice but to file a motion to transfer or dismiss the California Action.[5]  (C.D. Cal. Case No. 19-cv-1527, Dkt. 10)

At the same time, West's filing of, and the purported claims he advanced in, the California Action create a justiciable controversy between the parties concerning their respective rights and obligations under the Agreements, and constitute a material breach of the Agreements, entitling EMI to declaratory and injunctive relief in the SDNY.  Accordingly, and consistent with the Agreements' Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, EMI filed the Complaint on March 7, 2019, a mere five weeks after Defendants filed the California Action.  (Dkt. 1)  Now, in a further breach of the Agreements, including the Exclusive New York Forum Selection Clause, Defendants move to dismiss, transfer, or stay this action on the supposed basis of subject matter jurisdiction and inconvenient forum.

---

[5] Plaintiffs removed the California Action to the Central District of California on March 1, 2019.  At the initial pretrial conference ("IPTC") for this case, Defendants' counsel stated that Defendants anticipate filing a motion to remand the California Action to California state court.

## ARGUMENT

**I.    THE COURT SHOULD REJECT DEFENDANTS'
JURISDICTIONAL CHALLENGE BECAUSE PLEASE
GIMME IS NOT A NECESSARY OR INDISPENSABLE PARTY**

Defendants argue that Please Gimme, a dissolved company, is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure ("Rule 19"), and that its joinder destroys the Court's subject matter diversity jurisdiction.  (Mot. 11-14)  Defendants get it wrong.

Rule 19 establishes a two-step test for determining whether a court must dismiss an action for failure to join an indispensable party.  *First*, the court must determine whether an absent party is "necessary" or "required", and therefore belongs in the suit.  *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  An absent party is necessary if (1) complete relief is not possible in the non-party's absence, or (2) the non-party "claims an interest relating" to the action and disposition without the non-party may (i) "impair or impede the [non-party's] ability to protect that interest", or (ii) create a "substantial risk" of subjecting the named parties to multiple or inconsistent obligations as a result of the claimed interest.  Fed. R. Civ. P. 19(a).  If a party is not necessary, then courts need not decide whether its absence warrants dismissal.  Fed. R. Civ. P. 19(b); *Viacom Int'l, Inc.*, 212 F.3d at 724.  If, on the other hand, an absent party *is* necessary, courts consider whether joinder of the absent party is not feasible for jurisdictional or other reasons, and whether it is "indispensable".  Fed. R. Civ. P. 19(b).  Only if a court determines that a party is both necessary and indispensable can it dismiss the action under Rule 19.  *Viacom Int'l, Inc.*, 212 F.3d at 725.  These rules bar the jurisdictional challenge here.

### A.    Please Gimme Is Not A Necessary Party Because It Does Not Exist

Defendants base their entire argument that Please Gimme is necessary on the fact that it *was* "a party to the contract on which EMI has sued."  (Mot. 11)  This argument is specious.

*First*, because Please Gimme has been dissolved since January 2010 (well before the issues giving rise to the litigation occurred), it is not a necessary party to this litigation.  Under New York law, a corporation continues to exist after dissolution *only* for the purposes of winding up its affairs, and may only "sue or be sued on its obligations, including contractual obligations

7

and contingent claims, until its affairs are fully adjusted".  N.Y. Bus. Corp. Law § 1006.  After

its obligations and claims *existing at the time of dissolution* are resolved, the corporation no

longer has standing to sue or be sued, particularly with respect to liabilities accruing after

dissolution.  *See Moran Enters., Inc. v. Hurst*, 66 A.D.3d 972, 975 (N.Y. App. Div. 2009) ("a

dissolved corporation is prohibited from carrying on new business . . . and does not enjoy the

right to bring suit" on claims accruing after dissolution).

As set forth above, Please Gimme has been dissolved since at least January 27, 2010 – a

fact that Defendants do not and cannot contest.[6]  (*See* Jacobs Decl. ¶ 10, Exh. I; *see also* Mot.

11)  EMI's Complaint relates to Defendants' filing of an improper action in *2019*, well after

Please Gimme was dissolved, and Defendants' claims in the California Action did not accrue

until October 1, 2010, more than eight months after Please Gimme's dissolution.  (Cplt. ¶ 34,

Exh. A at ¶ 2.)  Because the underlying claims accrued *after* Please Gimme's dissolution, the

claims in the California Action and here cannot be considered part of Please Gimme's winding

up efforts.  As such, Please Gimme has no interest relating to this action, and "complete relief"

may be granted in its absence.  *See* Fed. R. Civ. P. 19(a).

*Second*, Please Gimme is not a necessary party because it assigned all of its rights, title,

interests, assets, and obligations under the Agreements to WB.  (Jacobs Decl. ¶ 8, Exh. G at ¶¶

2.01(a)-(b))  The SDNY consistently has held that when an entity assigns all of its rights and

interests to another person or entity, the assigning entity ceases to be a necessary party to

litigation involving the assigned rights.  *See Avlon v. 829-31 Rest. Corp.*, Case No. 92 CIV.

9372, 1993 WL 403982, *4 (S.D.N.Y. Oct. 5, 1993) (rejecting defendants' argument that non-

party corporation was necessary party where corporation "validly transferred all its assets" to the

---

[6] Defendants' attempts to rely on EMI's statements to the contrary in earlier filings in other cases go
nowhere.  Defendants overstate EMI's so-called "admissions", all of which predate this litigation by
*years*.  (Mot. 12)  The first three cases on which Defendants rely to show that EMI supposedly admitted
that Please Gimme is an extant entity are irrelevant because Broadcast Music, Inc., a performing rights
organization, not EMI, filed them, and decided to name Please Gimme as a plaintiff.  The fourth case was
jointly defended by West and EMI, so any admission in the case would have been based on information
that West's team supplied.  Regardless, Defendants do not, and cannot, avoid the fact that it is *undisputed*
that Please Gimme has been dissolved since January 2010.

named plaintiffs); *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 48 (S.D.N.Y. 1991) (entities that assigned "all right, title and interest in the proceeds" from the action "obviously were not indispensable parties by any stretch of the meaning of [Rule] 19"); *F.D.I.C. v. Huntington Towers, Ltd.*, 443 F. Supp. 316, 319-20 (E.D.N.Y. 1977) ("assignor who has assigned all right and interest to another need not be joined in an action involving the property assigned because complete relief can be accorded in his absence and . . . he has no interest to protect."); *Capitol Records, Inc. v. Mercury Record Corp.*, 109 F. Supp. 330 (S.D.N.Y. 1952) (recording artists not indispensable parties where they assigned their rights to record company); *accord On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 254 (D. Conn. 2001) (assignment renders a contracting party unnecessary and dispensable); *Cohen v. Heussinger*, Case No. 89 CIV. 6941, 1994 WL 240378, *2 (S.D.N.Y. May 26, 1994) (defunct and assetless corporation cannot be deemed an indispensable party because it is not a real party in interest); *see also* Wright, Miller & Kane, Fed. Prac. & Proc., Civil 2d § 1613 at 188-89 ("[a]n assignor of rights and liabilities under a contract is not needed for a just adjudication of a suit brought by the assignee").

Here, Defendants ignore that they admitted and represented in the 2012 Modification that Please Gimme assigned all of its rights, title, interests, assets, and obligations under the Agreements to WB.  (Jacobs Decl. ¶ 8, Exh. G at ¶¶ 2.01(a)-(b))  Instead of addressing this assignment, they rely solely on the fact that the parties added Please Gimme to the original Agreement, claiming that this "ends the Court's jurisdiction over the dispute".  (Mot. 11)  But, as set forth above, Defendants' argument ignores vast swaths of SDNY case and statutory law regarding Rule 19 and dissolved companies.[7]  At bottom, Defendants have not explained (and nor can they) how the defunct Please Gimme could be a necessary party, or why complete relief cannot be accorded among the properly named parties in its absence.

*Third*, because Please Gimme merely is a d/b/a of WB, it has no distinct legal existence,

---

[7] The cases Defendants cite are of no use to them.  Unlike here, *Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991), did not involve an assignment of rights by the contracting party, and *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 703 (S.D.N.Y. 1997), did not involve a dissolved entity with no assets or rights to the property at issue.

and, therefore, cannot sue or be sued. *See Cusano v. Horipro Entm't Grp.*, 301 F. Supp. 2d 272, 277 (S.D.N.Y. 2004) ("Use of a fictitious business name [including the d/b/a designation] does not create a separate legal entity" distinct from its owner); *In re Residential Capital, LLC*, Case No. 12-12020, 2014 WL 3057111, *3 (Bankr. S.D.N.Y. July 7, 2014) (same); *accord Tr. of Constr. Indus. & Laborers Health & Welfare Tr. v. C & W Enters., Inc.*, 298 F. App'x 566, 567 (9th Cir. 2008) ("The designation 'd/b/a' is merely descriptive . . . and does not create a distinct corporate entity"); *PB Farradyne, Inc. v. Peterson*, Case No. C 05-3447, 2006 WL 132182, at *5 (N.D. Cal. Jan. 17, 2006) (a d/b/a "is not a separate legal entity capable of . . . asserting any claims of infringement"). This, too, dooms Defendants' necessary party argument.

*Fourth*, even if Please Gimme had rights or obligations to protect (it does not), it still would not be a necessary party because Please Gimme is sufficiently represented by both WB and West. "[A] person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013). Where the remaining parties can "champion [the third party's] interest" the potential prejudice "approaches a vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects." *Id.* Given that WB admitted and represented in the 2012 Modification that it is the assignee of all of Please Gimme's rights and obligations under the Agreements, WB inarguably can adequately represent its rights and interests. Similarly, West, as the former chief executive officer of the now-defunct Please Gimme, and as the sole member of WB, can "assert any defense or raise any argument that [Please Gimme] would have asserted or raised if it had been present, [and Please Gimme's] interests are adequately represented and its joinder is not necessary." *See Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.*, 140 B.R. 56, 58 (S.D.N.Y. 1992) (corporation was not necessary party because, "as a practical matter", corporation's officers could assert all available defenses and adequately represent corporation's interests because they owned all of the corporation's stock and were the sole members of the board).

*Fifth*, there is no risk of incurring double, multiple or inconsistent obligations if Please

Gimme is not added as a party.  Fed. R. Civ. P. 19(a)(2)(ii).  Inconsistent obligations are not the same as inconsistent adjudications or results.  *Nelligan v. Cmty. Gen. Hosp. of Sullivan Cty.*, 240 F.R.D. 123, 125 (S.D.N.Y. 2007).  "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident".  *Id.*  Because Please Gimme has no rights or interest in the property at issue, there is no risk of inconsistent obligations.

As discussed above, Defendants' contentions regarding Please Gimme's necessity here are completely baseless.  For these reasons, Please Gimme is not a necessary party here.

### B.  Assuming, *Arguendo*, That Please Gimme Is A Necessary Party (And It Is Not), It Nevertheless Is Not An Indispensable Party

As set forth above, because Please Gimme is not a necessary party, the Court need not consider whether it is indispensable.  However, even if the Court concludes that Please Gimme is necessary (and, respectfully, it should not), Defendants still cannot show that it is indispensable.

To determine whether a necessary party is indispensable or the action can proceed without the necessary party under Rule 19(b), courts are to consider "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."  Fed. R. Civ. P. 19(b).  This analysis requires courts to evaluate (1) the extent to which "a judgment rendered in the person's absence might be prejudicial to the person or those already parties"; (2) the extent to which the prejudice can be lessened "by protective provisions in the judgment, by the shaping of relief, or other measures"; (3) the adequacy of the judgment in the necessary party's absence; and (4) "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder".  *Id.*  The analysis is not rigid, and allows courts "to determine the emphasis to be placed on each consideration according to the facts of [the] given case and in light of the governing equity-and-good-conscience test."  *Assoc. Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984) (same). Ultimately, "very few cases should be terminated due to the absence of nondiverse parties unless

there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987).

Here, Defendants state in a conclusory fashion that the four factors show that Please Gimme is indispensable, without offering any support for their position. In reality, none of the four factors weighs in favor of indispensability. To the contrary, resolution of this action without Please Gimme not only is possible, *but practical*. As set forth above, because Please Gimme is not a necessary party and has no remaining rights, interests, or obligations under the Agreements, no named parties will suffer any prejudice as a result of its exclusion. Additionally, because WB is the assignee of all of Please Gimme's rights, interests, and obligations, judgment in this action would provide full and complete relief. Finally, EMI will not have an adequate remedy if the case is dismissed for nonjoinder, because such an outcome would effectively reward Defendants' forum shopping, and disregard the Exclusive New York Forum Selection Clause and the strong policy considerations favoring its enforcement. (*See* pages 19-20, *infra*.)

Because Please Gimme is neither a necessary nor an indispensable party, Defendants' Motion on subject matter jurisdiction grounds should be denied in its entirety.

## II.    DEFENDANTS' *FORUM NON CONVENIENS* THEORY IGNORES THE FACTS AND LAW, AND SHOULD BE REJECTED IN ITS ENTIRETY

As with many of their other arguments, Defendants invoke the *forum non conveniens* doctrine in order to conceal their own forum shopping. However, these efforts, too, are unavailing because they are at war with controlling law and the Exclusive New York Forum Selection Clause.

Pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), a district court typically may transfer a civil action "to any other district or division where it might have been brought or to any district or division to which all parties have consented", when doing so would convenience the parties and witnesses and would be "in the interest of justice". 28 U.S.C. § 1404(a). The party seeking a change in venue must demonstrate by "clear and convincing evidence" that the action should be transferred. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102,

114 (2d Cir. 2010).  Where no forum selection clause is involved, a district court considering a Section 1404(a) motion typically "must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013) ("*Atlantic Marine*" or "*Atl. Marine*").

However, "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'"  *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  Indeed, "***a proper application of [Section] 1404(a) <u>requires</u> that a forum-selection clause be given controlling weight in all but the most exceptional cases***."  *Atl. Marine*, 571 U.S. at 59-60 (emphasis added); *see also In Re Residential Capital, LLC*, Case No. 14CV4950, 2014 WL 4652664, *4 (S.D.N.Y. Sept. 10, 2014) (quoting same).  The SDNY has "recognized that the 'strong federal public policy supporting the enforcement of forum selection clauses' that was reaffirmed in *Atlantic Marine* does not depend on the particular posture of the case before the court."  *Encompass Aviation, LLC v. Surf Air Inc.*, Case No. 18-CV-5530, 2018 WL 6713138, *5 (S.D.N.Y. Nov. 30, 2018) (quoting *ICICI Bank Ltd. v. Essar Glob. Fund. Ltd.*, 565 B.R. 241, 525 (S.D.N.Y. 2017)).  Here, Defendants pretend as though the Exclusive New York Forum Selection Clause does not exist, and otherwise fall far short of showing that the action should be dismissed or transferred.

### A.  <u>Defendants Waived Any Right They Had To *Forum Non Conveniens* Relief</u>

As an initial matter, Defendants long ago waived any right they may have had to *forum non conveniens* relief or to seek to transfer this action to California when they entered into the Agreement.  Specifically, as discussed above, under the Exclusive New York Forum Selection Clause, Defendants expressly agreed not to challenge suit in this Court on *forum non conveniens* grounds, or otherwise seek to transfer suit in this Court for any reason to any other venue. (Jacobs Decl. ¶ 2, Exh. A at ¶ 21.01)  But, by filing the Motion, Defendants not only seek the very relief they waived, but they also have put themselves in further breach of the Agreement. The Court should deny the Motion for these reasons alone.

**B.      Defendants' *Forum Non Conveniens* Theory Is Also Procedurally Defective**

Dismissal based on venue typically only is permissible when the chosen "venue is 'wrong' or 'improper'", not merely, as Defendants argue here, *inconvenient*.[8]  *Atl. Marine*, 571 U.S. at 55.  Because Defendants do not and cannot demonstrate that the SDNY is a "wrong" or "improper" forum, their dismissal request based on this theory should be denied.  Accordingly, at most, the only issue for the Court is whether a ***transfer*** on *forum non conveniens* grounds is appropriate.  As set forth below, the answer to that question is a resounding no.

**C.      In Any Event, The *Forum Non Conveniens* Theory Fails On The Merits**

Defendants' requests for dismissal and transfer on *forum non conveniens* grounds fare no better on the merits.  Courts routinely recognize that "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."  *Atl. Marine*, 571 U.S. at 63; *Encompass Aviation*, 2018 WL 6713138, at *5 (same).  For that reason, a valid forum-selection clause requires courts to employ an altered test for determining whether transfer under Section 1404(a) is warranted.  *Id.* at 63.  *First*, "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted".  *Encompass Aviation*, 2018 WL 6713138, at *5 (applying *Atlantic Marine* when defendant moved to transfer on *forum non conveniens* grounds in violation of valid forum selection clause).  *Second*, the court should not consider the parties' private interests or the convenience of the parties, because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient".  *Atl. Marine*, 571 U.S. at 64.  *Third*, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [Section] 1404(a) transfer of venue will not carry with it the [different] venue's choice-of-law

---

[8] Although *Atlantic Marine* left open the question of whether a party may seek dismissal pursuant to Rule 12(b)(6) based on the opposing party's violation of a forum selection clause, 571 U.S. at 61, that is not the procedural posture of this case.  Here, Defendants do not premise their motion to dismiss on EMI's violation of the Exclusive New York Forum Selection Clause, and nor can they, because *EMI is complying with it*.  In fact, the opposite is true; Defendants seek dismissal in a continued effort to *defy* the Exclusive New York Forum Selection Clause.

rules—a factor that in some circumstances may affect public-interest considerations." *Id.* The result is that "[i]n all but the most unusual cases . . . the interest of justice is served by holding parties to their bargain" and upholding the forum selection clause. *Atl. Marine*, 571 U.S. at 66.

1. The Exclusive New York Forum Selection Clause Is Valid

As a threshold matter, "the Second Circuit has developed a policy of honoring forum selection clauses." *Carematrix of Mass., Inc. v. Kaplan*, 385 F. Supp. 2d 195, 198 (S.D.N.Y. 2005) ("*Carematrix*"). A forum selection clause is "presumptively enforceable" if it was "communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute". *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). Here, the parties indisputably agreed that any claims relating to the Agreements "***shall*** be instituted and maintained ***exclusively*** in any federal or state court located within the county of New York in the State of New York", and later ratified and confirmed this agreement on multiple occasions. (*See* Jacobs Decl. ¶ 2, Exh. A at ¶ 21.01 (emphasis added)) There is no question that the Agreements apply to the claims and parties in this action and the California Action, and that EMI's claims here arise out of Defendants' breach of the Agreements. (Cplt. ¶¶ 43-71)

A party can only an overcome a forum selection clause's presumptive enforceability by making a *strong* showing that (1) the clause is the "result of fraud or overreaching"; (2) the party will "be deprived of his day in court, due to the *grave* inconvenience of the selected forum"; (3) the "fundamental unfairness of the chosen forum may deprive [him] of a remedy"; or (4) the clause contravenes "a strong public policy of the forum state". *Carematrix*, 385 F. Supp. 2d at 197-98 (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362-63 (2d Cir. 1993)). Defendants make no attempt to show that the Exclusive New York Forum Selection Clause is unenforceable; nor can they. In fact, other than a blink-and-you-miss-it reference to the clause in Defendants' preliminary statement, there is no mention of it whatsoever. But the Exclusive New York Forum Selection Clause exists, and is valid and enforceable here for multiple reasons.

*First*, Defendants do not and cannot argue that the Exclusive New York Forum Selection Clause is the result of fraud. As discussed above, Defendants, represented by seasoned and

reputable music industry lawyers at all times, knowingly and voluntarily agreed to the provision when they entered into the 2003 Agreement and seven Modifications.  (*See* pages 2-5, *supra*)

*Second*, because Defendants agreed to the Exclusive New York Forum Selection Clause, they "waived [their] right to challenge this forum as inconvenient", notwithstanding their attempt to do so now.  *Encompass Aviation*, 2018 WL 6713138, at *12; *see also Spector v. Soc. Standards, Inc.*, Case No. 17 Civ. 4023, 2017 WL 9565760, *1 (S.D.N.Y. Sept. 7, 2017) (rejecting argument that enforcing forum selection would be inconvenient where objecting party had agreed to it).  Even if Defendants *could* challenge the SDNY as inconvenient (and they cannot), they are unable to demonstrate that West would "be deprived of his day in court, due to the *grave* inconvenience of the selected forum".  *See Carematrix*, 385 F. Supp. 2d at 197 (emphasis added).  West's argument regarding inconvenience rests solely on the fact that he lives in California and "created and recorded the compositions due under the contract [there]."  (Mot. 15)  But that West's home base is elsewhere fails to establish that the SDNY is *gravely* inconvenient.  As Defendants concede, West has owned companies throughout the United States, including in New York.  (Mot. 3)  Defendants also ignore the Agreements' many connections with the State of New York (*see* pages 2-5, *supra*), and that West agreed that his performance obligations are "deemed to have taken place in the State of New York".  (Jacobs Decl. ¶ 2, Exh. A at ¶¶ 2.01, 2.02)  Defendants' purported convenience arguments are fictions designed to avoid their heavy burden of demonstrating that the SDNY is "gravely inconvenient".

*Third*, Defendants cannot show, as they must, that they will be deprived of a remedy based on the SDNY's fundamental unfairness.  Aside from the fact that Section 2855 does not apply to the Agreements because they are not personal services contracts, the Agreements' New York Choice Of Law Clause forecloses West from relying on the Section 2855 in an attempt to evade the Exclusive New York Forum Selection Clause.  (*See* pages 3-4, *supra*)  When, as here, "parties include a choice-of-law provision in a contract, they intend that the law of the chosen state, and no other state, including its statutes, will be applied."  *Gottwald v. Sebert*, Case No. 653118/2014, 2017 WL 1062924, at *5 (N.Y. Sup. Ct. Mar. 20, 2017) (rejecting defendant's

Section 2855 counterclaim "because it [was] barred by the choice of law provisions" in the applicable agreements), *aff'd*, 161 A.D.3d 679, 680 (N.Y. App. Div. 2018) ("the unambiguous New York choice-of-law provisions contained in the agreements preclude the application of [Section 2855]" and there "was no basis to invalidate the choice of law clauses").  This is consistent with New York's strong public policy interest in giving effect to New York choice of law clauses, including as a means of encouraging "parties to choose the New York justice system to govern their contractual disputes".  *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 920-24 (N.Y. Ct. App. 2015) (*"Ministers"*).  By agreeing to the New York Choice Of Law Clause, Defendants agreed that Section 2855 does not apply.  Thus, West's argument that he would be deprived of a remedy to which he is not entitled in the first place is a non-starter.

*Fourth*, Defendants cannot show that the Exclusive New York Forum Selection Clause contravenes "a strong public policy of the forum state".  *Carematrix*, 385 F. Supp. 2d at 197-98.  Defendants argue that public policy requires that the case be stayed because "California courts have a substantial interest in resolving issues of California state law."  (Mot. 21)  Defendants are wrong.  Where parties agree to a New York choice of law provision, the choice "should be enforced, unless the public policy of another jurisdiction has an overriding concern so strong that it trumps New York's strong public policy in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the world."  *Gottwald*, 2017 WL 1062924, at *5.  As set forth on pages 2 through 5 above, the New York Choice Of Law Clause and multiple other provisions in the Agreements demonstrate that the New York courts have a significant interest in adjudicating the claims in this action.  *See Ministers*, 45 N.E.3d at 920-24.  Further, Defendants have not and cannot cite any case law establishing that "California's public policy in enacting [Section 2855] . . . demonstrate[s] an overriding public interest that is materially greater than New York's interest in enforcing the parties' choice of New York law."  *Gottwald*, 2017 WL 1062924, at *5.  To the contrary, "[t]he fact that a statute is a policy choice is not evidence of an interest materially greater than New York's."  *Id.* at *6.

Thus, the Exclusive New York Forum Selection Clause is valid and enforceable.

17

2.       *Atlantic Marine* Requires That This Action Remain In The SDNY

Because the Exclusive New York Forum Selection Clause is valid and enforceable, the

Court must apply the modified *forum non conveniens* analysis set forth in *Atlantic Marine*.  The

application of this adjusted Section 1404(a) framework conclusively demonstrates that

Defendants cannot meet their burden of demonstrating by clear and convincing evidence that the

Court should dismiss or transfer this action to California for several reasons.

*First*, a "plaintiff's choice of forum is generally entitled to great deference when the

plaintiff has sued in the plaintiff's home forum."[9] *Iragorri v. United Techs. Corp.*, 274 F.3d 65,

71 (2d Cir. 2001).  Further, "when a [party] agrees by contract to bring suit only in a specified

forum – presumably in exchange for other binding promises by the defendant – the [party] has

effectively" made its forum selection before the dispute arises.  *Atl. Marine*, 571 U.S. at 64.

"Only that initial choice deserves deference".  *Id.*

Transfer is not appropriate here because EMI complied with the Exclusive New York

Forum Selection Clause, *and* sued where its principal place of business is located.  Defendants

try to avoid this by claiming that EMI's choice of forum should be given less weight because it

was "motivated by forum-shopping reasons".  (Mot. 14)  Defendants attempt to rewrite history,

and ignore that forum shopping motivated *their* defiance of the Exclusive New York Forum

Selection Clause when they filed the California Action.  The parties unequivocally agreed to

litigate all claims exclusively in federal or state courts in New York County.  (Jacobs Decl. ¶ 2,

Exh. A at ¶ 21.01)  There is no basis for a claim of forum shopping where a forum selection

clause provides for suit in the district chosen by a plaintiff.  *Ins. Co. of N. Am. v. ABB Power*

*Generation, Inc.*, 112 F.3d 70, 72 (2d Cir. 1997) (no forum shopping where plaintiff complied

with exclusive forum selection clause).  Thus, EMI's forum selection, which accords with the

Agreements, deserves deference and should not be disturbed here.

*Second*, although Defendants argue that various private interest factors weigh in favor of

---

[9] An important exception to this rule exists when, as Defendants did in the California Action, the plaintiff
defies a valid forum selection clause.  *See Atl. Marine*, 571 U.S. at 63-64.

having this matter adjudicated in California (Mot. 15-16, 19), none of these factors is relevant here.  As set forth above, the parties' private interests, including interests relating to their or their witnesses' convenience, are irrelevant.[10]  *Atl. Marine*, 571 U.S. at 64.  As a result, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum".  *Id.*

     *Third*, other than the Exclusive New York Forum Selection Clause itself, the Court only may consider public-interest factors in deciding this Motion.  *Id.*  When deciding a Section 1404(a) motion, courts generally consider the following public-interest factors:  "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  The "practical result [of those factors] is that forum-selection clauses should control except in unusual cases."  *Atl. Marine*, 571 U.S. at 64 (emphasis added).

     Defendants cannot demonstrate that any of public interest factors warrant transfer.  Specifically, although Defendants argue that the SDNY is a "paradigmatic 'congestion center' of litigation" (Mot. 16), they cannot overcome the fact that the SDNY is "busy here[, but t]hey are equally busy in California."  *Encompass Aviation*, 2018 WL 6713138, at *10.  Nor can Defendants demonstrate that "the familiarity of the forum with the governing law warrants transfer."  *See id.*  Though Defendants argue that California is "at home" with Section 2855 and disputes relating to the statute should be adjudicated there, their argument is based on the false premise that Section 2855 applies here.  As set forth above, it does not.[11]  In fact, because the parties jointly agreed to the Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, *New York* courts are the most "at home" with the bargained for New York law,

---

[10] As the *Atlantic Marine* decision confirms, "'[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.'"  571 U.S. at 64 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972)).

[11] Even if Section 2855 applied in this dispute (and it does not), courts frequently, and are well equipped to, apply other states' laws.  There is no reason this Court certainly would be unable to interpret Section 2855.

and New York has a significant interest in adjudicating these claims.  *See Ministers*, 45 N.E.3d at 923 ("logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply").  To hold otherwise would be to "contravene the primary purpose of including a choice-of-law provision in a contract."  *Id.* at 922.  This approach also is consistent with "the basic tenets of contract interpretation", *id.*, and other fundamental New York law principles.  *See, e.g.*, N.Y. Gen. Oblig. L. §§ 5-1401 & 5-1402. New York law, therefore, governs this action, and SDNY is "at home" with the law.

For these reasons, the Court should enforce the parties' Exclusive New York Forum Selection Clause, the Motion should be denied, and this action should remain in the SDNY.

## III.   THE FIRST-FILED RULE DOES NOT APPLY DUE TO DEFENDANTS' GAMESMANSHIP AND FORUM SHOPPING IN THE CALIFORNIA ACTION

Notwithstanding the failings of their other arguments, Defendants rely on the "first-filed" rule in a continued effort to request that the Court dismiss, stay, or transfer this action to California.  Defendants' argument does not pass muster.

It is well established that "federal declaratory judgment is not a prize to the winner of a race to the courthouses."  *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).  When proceedings involving the same parties and issues are both pending in separate federal courts, the first-filed usually takes priority *unless* there are "special circumstances" that give priority to the later-filed action, *or* a balance of convenience favors the later-filed action. *Michael Miller Fabrics, LLC v. Studio Imports Ltd.*, Case No. 12 CV 3858, 2012 WL 2065294, *2 (S.D.N.Y. June 7, 2012) (citing *City of N.Y. v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991)).  Indeed, the first-filed rule is merely a presumption that "may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."  *Emp'rs Ins.*, 522 F.3d at 274. To that end, where forum-shopping motivated the choice of the venue for the first suit, the first-filed rule does not apply, and the later-filed action is given priority.  *Motion Picture Lab. Techs. Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986); *Michael Miller Fabrics, LLC*, 2012 WL 2065294, at *2.  Here, Defendants are not entitled to rely on the first-filed rule.

*First*, Defendants are not entitled to the benefits of the first-filed rule because their decision to file in California was motivated solely by forum shopping.  The SDNY has held that a defendant cannot invoke the first-filed rule where he previously "select[ed] a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Everest Cap. Ltd. v. Everest Funds Mgmt., LLC*, 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002); *Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) (defendant not entitled to benefits of first-filed rule where it commenced action in Virginia, "notwithstanding the clear and mandatory agreement . . . to litigate in New York"); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996) (same).  It also is well-established in other circuits that when parties violate exclusive forum selection clauses in order to "preempt resolution of the parties' dispute by the proper forum", they are not entitled to any deference under the first-to-file rule.  *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) ("By filing in Ohio courts [the first forum], Defendants were attempting to forum shop as well as preempt resolution of the parties' dispute by the proper forum" and therefore could not rely on the first-filed rule).  "[I]f the rule were that a party could circumvent a forum selection clause simply by filing a lawsuit in a different forum and then asserting that the first-filed doctrine trumped, forum selection clauses would be rendered meaningless." *MEI Techs., Inc. v. Detector Networks Int'l, LLC*, Case No. CV 09-042, 2009 WL 10665141, at *4 (D.N.M. July 6, 2009); *see also In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[s]uch deference to the filing forum would only encourage parties to violate their contractual obligations, the integrity of which are vital to our judicial system").

Here, the Agreements contain the Exclusive New York Forum Selection Clause and New York Choice Of Law Clause.  (*See* pages 3-4, *supra*)  Accordingly New York, and *not* California, is the appropriate forum for any dispute related to the Agreements.  To avoid their bargained-for forum selection and choice of law, Defendants failed to even mention, let alone address, the clauses in the California Action, and do barely more here.  Instead, Defendants seek to have their claims heard in California to avail themselves of Section 2855, in direct violation of

the Exclusive New York Forum Selection Clause and New York Choice of Law Clause. Because Defendants' conduct reveals that the California Action was motivated by forum shopping, fairness requires the Court to decline to apply the first-filed rule.

*Second*, Defendants' inclusion of Please Gimme in their state court complaint in the California Action, and their attempt to destroy diversity here by arguing that Please Gimme is necessary and indispensable, is further evidence of Defendants' forum shopping. As discussed on pages 7 through 11 above, Please Gimme is dissolved, and assigned any and all rights in, ownership of, and obligations concerning the rights to the Compositions to WB before any of the claims at issue accrued. Nevertheless, Defendants continue to argue that Please Gimme is a required party. The reason is simple: Defendants want to be in California state court because they believe that a such court would the most likely to enforce Section 2855. (Mot. 14) This is the type of "attempt . . . to win a tactical advantage resulting from local laws" that the Second Circuit rejects. *Iragorri*, 274 F.3d at 72.

*Third*, Defendants are not entitled to the benefits of the first-filed rule because California has minimal connections to the factual circumstances of this action, particularly in light of New York's multiple and significant connections. Just as they do with respect to the convenience analysis, Defendants rely almost exclusively on their baseless invocation of Section 2855, and West's personal connections to California, regardless of whether those connections concern the issues in this litigation. (Mot. 19) But as discussed above, the parties' bargained-for Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, as well as the Agreements' multiple other bargained-for connections to New York, are controlling here.

*Fourth*, the balance of convenience factors demonstrate that the Court should disregard the first-filed rule. The balance of convenience is determined by weighing the same factors that are considered in connection with a motion to transfer venue. *Emp'rs Ins.*, 522 F.3d at 275. As discussed above, the modified transfer analysis weighs in favor of maintaining this action in New York. (*See* pages 18-20, *supra*) Accordingly, the balance of convenience factors also weigh in favor of New York, and against the first-filed rule.

22

Thus, Defendants cannot rely on the first-filed rule, and the Motion should be denied.

**IV.    NO HARDSHIP OR INEQUITY JUSTIFIES A STAY OF THIS CASE**

Based in no small part on Defendants' inability to demonstrate that dismissal or transfer of this action is warranted, they make a Hail Mary attempt to stay the action. Defendants' attempt is doomed from inception. Although courts have the inherent authority to stay proceedings, courts are tasked with exercising judgment and "weigh[ing] competing interests" before doing so. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). To obtain a stay, the movant "must make out a clear case of hardship or inequity in being required to go forward". *Id.* at 255. Instead of attempting to satisfy this threshold requirement, Defendants rely on *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) ("*Royal Park*"), for the proposition that the Court should consider various factors in evaluating whether to stay this case.[12] Aside from the fact that *Royal Park* involved a multi-district litigation proceeding, a far cry from the procedural situation here, each factor weighs against a stay.

*First*, as discussed above, EMI will be prejudiced if it is forced to litigate this dispute in a forum other than that which the parties mutually selected, or wait for a resolution of the California Action, which never should have been instituted in the first place, is resolved. (*See* pages 19-20, *supra*) That is especially true given Defendants' statement at the IPTC that they intend to file a motion to remand in the California Action. *Second*, by agreeing to the Exclusive New York Forum Selection Clause and New York Choice Of Law Clause, Defendants relinquished any private interest and burden arguments that another forum is more convenient. (*See* pages 18-19, *supra*) *Third*, the SDNY has a strong public policy supporting the enforcement of forum selection clauses. (*See* pages 13, 17, *supra*) *Fourth*, interests related to witnesses' convenience are irrelevant. (*See* page 19, *supra*) *Fifth*, as discussed above, all of the relevant public interest factors weigh in favor of maintaining this action in the SDNY. (*See*

---

[12] Specifically, those factors include "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Royal Park*, 941 F. Supp. 2d at 370.

pages 19-20, *supra*)  Accordingly, Defendants are not entitled to a stay in this action.

## CONCLUSION

For all of the foregoing reasons, EMI respectfully requests that the Court deny

Defendants' Motion in its entirety.

Dated:  New York, New York                Respectfully submitted,
        July 22, 2019


By: /s/ Robert A. Jacobs
    Robert A. Jacobs
    Prana A. Topper

    Manatt, Phelps & Phillips, LLP
    7 Times Square
    New York, NY 10036
    Telephone:  (212) 790-4500
    Facsimile: (212) 790-4545
    rjacobs@manatt.com
    ptopper@manatt.com

    *Attorneys for EMI April Music Inc. and EMI Blackwood Music Inc.*

    *Of Counsel for Plaintiffs*:

    Maura K. Gierl (*pro hac vice* application forthcoming)
    Molly Wyler (*pro hac vice* application forthcoming)
    Manatt, Phelps & Phillips, LLP
    11355 W. Olympic Blvd.
    Los Angeles, CA 90064
    Telephone:  (310) 312-4000
    Facsimile:  (310) 312-4224
    mgierl@manatt.com
    mwyler@manatt.com